(No. 63868.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. CHERYL A. ESPOSITO, Appellee.

*Opinion filed March 23, 1988.*

492

494

Neil F. Hartigan, Attorney General, of Springfield (Roma Jones Stewart, Solicitor General, and Patricia Rosen, Assistant Attorney General, of Chicago, of counsel), for the People.

Michael T. Smith, of Lisle, for appellee.

JUSTICE WARD delivered the opinion of the court.

The State brings this direct appeal under Rule 302(a) from a judgment of the circuit court of Kane County which held unconstitutional sections 11—501.1 and 6—206.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, pars. 11—501.1, 6—206.1), the provisions which authorize the summary suspension of driving privileges and the issuance of judicial driving permits.

The defendant, Cheryl Esposito, was stopped on March 9, 1986, after a police officer observed her automobile twice cross the center line of the road. Observing that her eyes were bloodshot and detecting a strong odor of alcohol on her breath, the officer requested the

defendant to submit to a breathalizer test. She complied, and the test revealed a blood-alcohol concentration (BAC) of 0.16. She was then placed under arrest and charged with driving under the influence of alcohol (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(2)), and with driving with a blood-alcohol concentration in excess of 0.10 (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501(1)). The defendant was subsequently notified that the Secretary of State (hereafter, Secretary) had summarily suspended her driving privileges under section 11—501.1 of the Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1). Following notification to her of the summary suspension, the defendant petitioned the circuit court of Kane County for a judicial driving permit (JDP) pursuant to section 6—206.1 of the Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1), and a JDP for work-related driving was issued. She also filed a petition for a hearing to rescind the summary suspension, pursuant to section 2—118.1(b) of the Vehicle Code (Ill. Rev. Stat. 1985, 95½, par. 2—118.1(b)). Along with this petition she filed a motion to dismiss "the cause" pending against her, contending, *inter alia*, that the statutory provisions which authorize the summary suspension of driving privileges (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1) and the issuance of judicial driving permits (Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1) violate the United States and Illinois Constitutions.

At the hearing on her motion, the circuit court declared sections 11—501.1 and 6—206.1 invalid under the fourteenth amendment of the United States Constitution and article I, section 2, of the Illinois Constitution. The court also held section 6—206.1 invalid under the separation of powers clause of the Constitution of Illinois. The court later stayed the effect of its order pending the outcome of an appeal. The Secretary then appealed directly

to this court under Supreme Court Rule 302(a) (107 Ill. 2d R. 302(a)).

This appeal presents these questions for review: (1) whether the summary suspension procedure established in section 11—501.1 of the Illinois Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1) violates the equal protection clauses of the Illinois and United States Constitutions, or deprives Illinois drivers of due process of law; and (2) whether section 6—206.1 of the Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1), which authorizes courts to issue judicial driving permits, violates the separation of powers doctrine of the Illinois Constitution or the equal protection guarantee of the Illinois and United States Constitutions.

I

We first address the defendant's challenge to section 11—501.1 of the Vehicle Code. Like all legislative enactments, this statutory provision carries a strong presumption of constitutionality (*Bernier v. Burris* (1986), 113 Ill. 2d 219, 227; *People v. Joseph* (1986), 113 Ill. 2d 36, 41), and all doubts must be resolved in favor of its validity (*Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 363). Accordingly, the burden rests on the defendant, as the challenging party, to rebut this presumption and to introduce evidence which demonstrates that the statute is unconstitutional. (*People v. Bales* (1985), 108 Ill. 2d 182, 188.) Describing the summary suspension process will aid understanding of our analysis of the defendant's challenges to section 11—501.1.

Section 11—501 of the Vehicle Code prohibits persons from driving or being in physical control of a vehicle anywhere in the State while under the influence of alcohol, other drug or combination thereof. The statute specifies four categories of persons prohibited from driving: (1) persons with an alcohol concentration of 0.10 or more

in their blood or breath; (2) persons under the influence of alcohol; (3) persons under the influence of drugs; (4) and persons under the combined influence of alcohol and drugs. Subsections 11—501(b) through (e) state the criminal penalties imposed on those convicted of violating the statute.

Section 11—501.1, the statute challenged here, implements the so-called "implied consent" concept and establishes the civil consequences of driving under the influence of alcohol or drugs. That section provides:

> "Any person who drives or is in actual physical control of a motor vehicle *upon the public highways of this State* shall be deemed to have given consent *** to a chemical test or tests of blood, breath, or urine for the purpose of determining the alcohol, other drug, or combination thereof content of such person's blood if arrested, as evidenced by the issuance of a Uniform Traffic Ticket, for any offense as defined in Section 11—501 or a similar provision of a local ordinance. The test or tests shall be administered at the direction of the arresting officer. The law enforcement agency employing said officer shall designate which of the aforesaid tests shall be administered." (Emphasis added.) Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1(a).

In addition to establishing the implied-consent concept, section 11—501.1 authorizes the Secretary to summarily suspend the driving privileges of two classes of offenders: (1) drivers who have been arrested and refuse to submit to a chemical test, and (2) drivers who have been arrested and submit to a chemical test which indicates an alcohol concentration of 0.10 or more in their blood, urine or breath. (Ill. Rev. Stat. 1985, ch. 95½, pars. 11—501.1(d), (e).) The statute requires the law enforcement officer requesting a test to warn the motorist that refusal to submit to a test and that submission to a test which reveals an alcohol concentration of 0.10 or more will result in a suspension of driving privileges for

the prescribed statutory period. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1(c).) If a person refuses to take a test, the arresting officer must certify this refusal in a sworn report which is sent to the court of venue and the Secretary. The Secretary then enters a statutory summary suspension for a six-month period. (Ill. Rev. Stat. 1985, ch. 95½, par. 6—208.1.) If a driver submits to a test which discloses an alcohol concentration of 0.10 or more (either immediately or through subsequent analysis of blood or urine collected at the time of the arrest), the officer similarly submits a sworn report and the Secretary imposes a summary suspension of driving privileges for a three month period. (See Ill. Rev. Stat. 1985, ch. 95½, pars. 11—501.1, 6—208.1.) The statute requires the officer submitting the sworn report to serve immediate notice on the driver and to confiscate any Illinois driver's license or permit found on the motorist at the time of arrest. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1(f).) Those persons with valid licenses or permits are issued a receipt which allows them to drive until the summary suspension takes effect on the 46th day following the date that the driver is notified of the suspension. Ill. Rev. Stat. 1985, ch. 95½, pars. 11—501.1(f), (g).

We first consider the defendant's contention that section 11—501.1 creates an unreasonable classification violative of the equal protection provisions of the United States and the Illinois Constitutions. Courts generally employ a two-stage analysis to determine whether a legislative classification deprives individuals of equal protection. Initially, the court determines the proper level of scrutiny to be applied to the challenged classification. When the statute under consideration affects a fundamental right or discriminates against a suspect class, courts will subject the legislation to strict scrutiny and uphold it only if it serves a compelling State interest. (See *Harris v. Manor Healthcare Corp.* (1986), 111 Ill.

2d 350; *People v. Tosch* (1986), 114 Ill. 2d 474; *Wilson v. All-Steel, Inc.* (1981), 87 Ill. 2d 28, 34.) Because the classification challenged here does not affect a fundamental right or discriminate against a suspect class, the proper standard for judging the statute is the familiar rational basis test. (*People v. Tosch* (1986), 114 Ill. 2d 474.) Under this test, a statutory classification must bear a rational relationship to a valid legislative purpose and the classifications created by the statute will be set aside as violative of the equal protection clause only if based on reasons totally unrelated to the pursuit of a legitimate State goal. *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350.

The defendant advances two arguments to support her claim that section 11—501.1 violates the equal protection guarantee. She first argues that section 11—501.1 violates the equal protection clause by treating persons who drive on public highways while impaired by alcohol, drugs, or a combination thereof, differently than persons who drive on private property while so impaired. In support of her claim, the defendant relies on an alleged inconsistency between section 11—501, which penalizes impaired drivers who drive anywhere in the State, and section 11—501.1, which applies the implied-consent concept and summary suspension procedure only to those who drive on public highways. This distinction is irrational, she argues, because the hazards which the legislature seeks to eliminate are just as great when an intoxicated person drives on private property, such as a shopping mall parking lot, as they are on a public highway. She claims, and we judge, erroneously, that the legislature therefore acted arbitrarily in limiting the application of section 11—501.1 to motorists who drive on public highways.

The equal protection clauses of the United States and Illinois Constitutions do not prohibit the General Assem-

bly from enacting legislation which affects different classes of persons differently. In the absence of involvement of a fundamental right, the legislature may even differentiate between persons similarly situated if there is a rational basis for doing so. (*People v. Tosch* (1986), 114 Ill. 2d 474, 481.) The legislature apparently did not regard the menace which intoxicated drivers pose to be the same to persons using private ways, driveways, and parking lots as it was to persons on public highways. Because a greater number of persons drive on public highways and because typically higher speeds are to be found on public highways than on private property, the legislature may have not unreasonably decided to limit the operation of the implied-consent statute to areas where impaired drivers pose the greatest threat to public safety.

Nor does the fact that section 11—501 prohibits intoxicated motorists from driving anywhere in the State, rather than only on public highways, alter our conclusion. As stated above, section 11—501 outlines the criminal penalties imposed on persons who drive under the influence of alcohol or drugs. The legislature may have rationally concluded that all persons who drive under the influence of alcohol, drugs or a combination thereof should be punished with criminal liability. Section 11—501.1, on the other hand, is civil, rather than penal in nature. (*People v. Adams* (1984), 128 Ill. App. 3d 725.) The implied-consent concept and the statutory summary suspension procedure were intended to protect the public, not to punish the licensee. The legislature could have rationally concluded that applying the implied-consent concept and statutory summary suspension only to persons driving on public highways adequately protected the public. It may be argued, of course, that the legislature should have drafted section 11—501.1 so that all persons who drive under the influence of alcohol or drugs anywhere in the State are subject to the statute. There is no

requirement, however, that a statutory classification be accurate or harmonious so long as it is not arbitrary and will accomplish the legislative design. *Schiller Park Colonial Inn, Inc. v. Berz* (1976), 63 Ill. 2d 499, 512.

The defendant also erroneously argues that section 11—501.1 violates the constitutional equal protection clauses in that it arbitrarily penalizes only persons who drive with a blood-alcohol concentration in excess of 0.10 with summary suspension while allowing other categories of impaired drivers to escape punishment. This distinction is irrational, she argues, because persons who drive while under the influence of alcohol or drugs, or a combination thereof, pose a risk to public safety just as those who drive with an alcohol concentration of 0.10 or more. She appears to maintain that summary suspension should therefore be imposed on all classes of impaired drivers, regardless of the reason for or degree of their impairment.

We would observe that the defendant erroneously construes section 11—501.1 to impose summary suspension only on drivers whose blood or breath test reveals an alcohol concentration of 0.10 or more. Section 11—501.1 imposes summary suspension on *all* drivers who *refuse* to submit to a chemical test, whether the driver is charged with driving under the influence of alcohol or with driving under the influence of drugs. The statute does make a classification, however, with respect to those drivers who submit to a chemical test. Only persons who submit to a breath, blood or urine test which discloses an alcohol concentration of 0.10 or more are subject to statutory summary suspension.

We are not persuaded by the defendant's contention, however, that persons with a BAC of 0.10 or more and other persons under the influence of alcohol, drugs, or a combination thereof, are so similarly situated as to require identical treatment under the equal protection

clause. The General Assembly enacted the summary suspension scheme in response to widespread concern over the threat which drunk drivers pose to safety and human life in our society (*In re Summary Suspension of Driver's License* (1987), 155 Ill. App. 3d 374) and may have rationally concluded that a statutory measure designed to remove drunk drivers from the roadways was more urgently needed than a measure to remove other categories of impaired drivers from the roads. The equal protection guarantee does not prohibit the legislature from choosing to focus particularly on the hazard posed by drunk drivers. The legislature is " 'allowed to take reform "one step at a time, addressing itself to the phase of the problem which seems most acute to the legislative mind" [citation]; and a legislature need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked.' " *Harris v. Manor Healthcare Corp.* (1986), 111 Ill. 2d 350, 372-73, quoting *McDonald v. Board of Election Commissioners* (1969), 394 U.S. 802, 809, 22 L. Ed. 2d 739, 746, 89 S. Ct. 1404, 1409.

Furthermore, the legislature has eliminated the need for a presuspension hearing for motorists charged with driving with an alcohol concentration of 0.10 or more, by conclusively determining that such an alcohol concentration impairs a person's ability to drive. This court upheld this legislative determination in *People v. Ziltz* (1983), 98 Ill. 2d 38, and held that the State may impose sanctions upon persons who drive with such an alcohol concentrate without additional proof of impairment. The legislature has not yet made such a statutory determination of impairment with regard to persons charged with driving under the influence of other drugs or a combination of alcohol and other drugs. Consequently, the State must conduct a hearing and demonstrate that the intoxicating

substance actually impaired the motorist's ability to drive before depriving such motorists of their privilege to drive, and the summary suspension procedure is inappropriate. Those who use drugs or a combination of alcohol and other drugs to the extent that it impairs their ability to drive, however, do not escape punishment. They are liable under section 11—501 of the Vehicle Code (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501), which makes driving under the influence of drugs or a combination of alcohol and other drugs a Class A misdemeanor. (See *In re Summary Suspension of Driver's License* (1987), 155 Ill. App. 3d 374.) Therefore, we cannot say that the legislature did not act rationally when it imposed summary suspension on drivers with an alcohol concentration of 0.10 or more but not on other categories of impaired drivers, and we hold that section 11—501.1 does not violate the equal protection guarantees of the United States and Illinois Constitutions.

We next consider the defendant's contention that the statutory summary suspension scheme in section 11—501.1 violates due process of law as guaranteed by the United States and Illinois Constitutions. The defendant argues that the failure to afford an evidentiary hearing prior to suspending the driver's license of a motorist who submits to a chemical test which reveals an alcohol concentration of 0.10 or more violates due process. Both parties agree that a license to drive, once issued, is a property interest which may not be suspended or revoked without due process of law. (*Bell v. Burson* (1971), 402 U.S. 535, 29 L. Ed. 2d 90, 91 S. Ct. 1586.) It is clear, however, that due process does not require a prior evidentiary hearing in every instance where the government seeks to deprive a person of driving privileges. See *Dixon v. Love* (1977), 431 U.S. 105, 52 L. Ed. 2d 172, 97 S. Ct. 1723.

In *Mathews v. Eldridge* (1976), 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33, 96 S. Ct. 893, 903 (holding that due process did not require a hearing prior to termination of disability benefits under the Social Security Act), the Supreme Court identified three factors for courts to consider in determining whether a prior hearing is necessary to satisfy the dictates of due process:

"[F]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

The Supreme Court has applied the *Eldridge* balancing test in two cases which considered the constitutionality of statutes allowing for administrative suspension of a driver's license without a prior evidentiary hearing. In the first, *Dixon v. Love* (1977), 431 U.S. 105, 52 L. Ed. 2d 172, 97 S. Ct. 1723, the Court upheld an Illinois statute which authorized the prehearing revocation of driving privileges of motorists whose licenses were repeatedly suspended upon conviction for certain traffic offenses. Similarly, in *Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612, the Court applied the *Eldridge* criteria to uphold a Massachusetts statute which mandated summary suspension of a driver's license for refusing to take a breath-analysis test upon arrest for operating a motor vehicle while under the influence of alcohol.

More recently, this court applied the *Eldridge* balancing test when upholding an Illinois statute which authorized the prehearing revocation of the driving privileges of motorists arrested for driving under the influence of alcohol in connection with an accident which resulted in

serious injury or death. (*People ex rel. Eppinga v. Edgar* (1986), 112 Ill. 2d 101.) Here, too, we resolve the due process question by utilizing the three-factor balancing test set forth in *Eldridge* and applied in *Love, Montrym* and *Eppinga.*

The first stage of the *Eldridge* inquiry requires consideration of the nature and weight of the private interest affected by the challenged statute. Here, the private interest at stake is the continued possession of a driver's license pending the outcome of a hearing. The *Montrym* Court determined that the actual weight given to this interest depended upon consideration of (1) the duration of the license suspension, (2) the availability of prompt post-suspension review, and (3) the availability of hardship relief.

Considering the duration of suspension, under our statutory scheme, driving privileges will be suspended for six months when a person refuses to submit to a chemical test, and for three months when a driver submits to a test which discloses an alcohol concentration of 0.10 or more. (See Ill. Rev. Stat. 1985, ch. 95½, pars. 11—501.1, 6—208.1.) Thus, the duration of the suspension under our statutory suspension scheme does not significantly differ from the duration of suspensions in the statutes approved in *Love* (one-year suspension), *Montrym* (90-day suspension), and *Eppinga* (revocation for an indefinite period).

Likewise, the differences between the Illinois system for post-suspension review and those systems approved in previous decisions are not constitutionally significant. The statute approved in *Love* did not require a post-suspension hearing until 20 days after the affected driver filed a written request for review. In *Montrym*, on the other hand, review was available immediately upon suspension and could be initiated simply by an oral request for a hearing. The post-suspension review procedure

challenged here falls ˙between those approved in *Love* and *Montrym*. Section 2—118.1 of the Vehicle Code mandates that a circuit court conduct a judicial hearing within 30 days after receipt of a written request from an affected driver. Actual suspension of driving privileges, however, does not take effect until *46* days after the affected driver is notified of the suspension. (Ill. Rev. Stat. 1985, ch. 95½, par. 11—501.1(g).) Consequently, the hearing can be either pre- or post-suspension, and the timeliness of the review depends largely upon the driver's diligence in filing a written request for a hearing.

The Illinois Vehicle Code also contains provisions for hardship relief unavailable under the Massachusetts statute considered and approved in *Montrym*. After receiving notification of the statutory suspension, a first offender may petition a circuit court for issuance of a judicial driving permit to use for employment or alcohol treatment purposes. (Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1.) Offenders may also petition the Secretary for issuance of a restricted driving permit to relieve undue hardship. (Ill. Rev. Stat. 1985, ch. 95½, par. 6—205(c).) After consideration of the opportunity for hardship relief, the limited duration of the suspension, and the availability of prompt post-suspension review, we conclude that neither the nature nor the weight of the private interest requires a prior evidentiary hearing to satisfy due process.

The second factor considered in the *Eldridge* balancing process is the likelihood of erroneous deprivation of the private interest involved as a result of the procedures used. In discussing this second stage of the *Eldridge* inquiry, the *Montrym* Court emphasized:

"[E]ven though our legal tradition regards the adversary process as the best means of ascertaining truth and minimizing the risk of error, the 'ordinary principle' established by our prior decisions is that 'something less than

an evidentiary hearing is sufficient prior to adverse administrative action.' *Dixon v. Love, supra*, at 113. And, when prompt postdeprivation review is available for correction of administrative error, we have generally required no more than that the predeprivation procedures used be designed to provide a reasonably reliable basis for concluding that the facts justifying the official action are as a responsible governmental official warrants them to be." *Montrym*, 443 U.S. at 13, 61 L. Ed. 2d at 331, 99 S. Ct. at 2618.

The *Montrym* Court concluded that the risk of error was not so substantial as to require a presuspension hearing, emphasizing that objective facts within the personal knowledge of an impartial governmental official served as the predicate for suspension. While acknowledging that the reporting officer might erroneously observe or deliberately misrepresent these facts, the Court determined that the risk of error was insubstantial, stating:

"The officer whose report of refusal triggers a driver's suspension is a trained observer and investigator. He is, by reason of his training and experience, well suited for the role the statute accords him in the presuspension process. And, as he is personally subject to civil liability for an unlawful arrest and to criminal penalties for willful misrepresentation of the facts, he has every incentive to ascertain accurately and truthfully report the facts. The specific dictates of due process must be shaped by 'the risk of error inherent in the truthfinding process as applied to the generality of cases' rather than the 'rare exceptions.' " 443 U.S. at 14, 61 L. Ed. 2d at 332, 99 S. Ct. at 2619.

The defendant argues that this case is distinguishable from *Montrym* because, unlike the statute approved there, section 11—501.1 authorizes suspension for motorists who submit to a chemical test which reveals an alcohol content of 0.10 or more in their blood or breath. She asserts that the risk of erroneous deprivation is greater

when the basis of suspension is chemical test failure, rather than refusal to submit to a test, due to possible errors in administering the test, and that a prior evidentiary hearing is necessary to offset this increased risk of error.

The argument does not persuade. The record reveals that here, as in *Montrym*, suspension was based, in part, on the observation of a police officer that the defendant was driving while intoxicated. The officer reported that the defendant's vehicle crossed the center line twice, that her eyes were bloodshot and that she had a strong odor of alcohol on her breath at the time of arrest. The officer's observations were substantiated by a breath-analysis test, which revealed an alcohol concentration of 0.16. Even if we assume *arguendo* that the risk of erroneous deprivation is enhanced when the result of a chemical test, rather than a refusal to submit to the test, serves as the basis of suspension, we are not persuaded that the risk of error is so substantial as to require an evidentiary hearing prior to an administrative suspension. "The Due Process Clause simply does not mandate that all governmental decision-making comply with standards that assure perfect, error-free determinations." *Mackey v. Montrym* (1979), 443 U.S. 1, 13, 61 L. Ed. 2d 321, 331, 99 S. Ct. 2612, 2618; see also *Ruge v. Kovach* (Ind. 1984), 467 N.E.2d 673 (where the Indiana Supreme Court held that the summary suspension of driver's licenses of persons with an alcohol content of 0.10 or more did not violate due process); *Heddan v. Dirkswager* (Minn. 1983), 336 N.W.2d 54 (where the Minnesota Supreme Court applied the *Eldridge* criteria and held that a similar statute did not violate due process).

Moreover, when disputes as to the accuracy of the testing procedure or results do arise, the hearing provided for in section 2—118.1 of the Illinois Vehicle Code

provides an appropriately timely opportunity for the licensee to challenge the validity of the test results. See *People v. Hamilton* (1987), 118 Ill. 2d 153, (where this court held that a licensee may raise the issue of noncompliance with the appropriate testing procedure and may contest the admission of allegedly invalid test results at a hearing conducted pursuant to section 2—118.1 to rescind the summary suspension).

The third and final stage of the *Eldridge* inquiry considers the public interest in the procedures used and the administrative and fiscal burden that would result from substitute procedures. (*Dixon v. Love* (1977), 431 U.S. 105, 52 L. Ed. 2d 172, 97 S. Ct. 1723.) Our State has a compelling interest in protecting persons who travel on public highways from the serious threat which drunk drivers pose to public safety. The summary suspension procedure outlined in section 11—501.1 of the Illinois Vehicle Code, like the suspension procedure considered and approved in *Montrym*, promotes that interest in several ways. The procedure not only removes a particularly dangerous class of drivers from the roadways as promptly as possible, it also deters others from driving while under the influence of alcohol. Moreover, the threat of suspension for refusal to take a chemical test provides motivation to submit to a test and thereby allows the State to obtain objective evidence of intoxication while preserving the due process rights of the offender. (*Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612.) The automatic character of the suspension also promotes the public interest in administrative efficiency, by eliminating a motorist's incentive to seek a presuspension hearing as a means of delaying the effectiveness of the suspension. *Mackey v. Montrym* (1979), 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612.

In sum, although the defendant has a substantial interest in continued enjoyment of driving privileges, she has failed to show us that a hearing is constitutionally required before the State may deprive her of that interest. We conclude that the summary suspension procedure outlined in section 11—501.1 materially advances the State's interest in public safety and imposes an insubstantial risk of erroneously depriving motorists of their privilege to drive. Accordingly, we reverse the judgment of the trial court and hold that section 11—501.1 satisfies the dictates of due process.

## II

We next address the constitutionality of section 6—206.1, the statutory provision which authorizes courts to issue judicial driving permits (JDP's). Section 6—206.1 authorizes a first-time offender whose license has been summarily suspended pursuant to section 11—501.1 to petition the circuit court for a JDP to relieve undue hardship. Section 6—206.1 provides:

> "Declaration of Policy. It is hereby declared a policy of the State of Illinois that the driver who is impaired by alcohol or other drugs is a threat to the public safety and welfare. Therefore, to provide a deterrent to such practice and to remove problem drivers from the highway, a statutory summary driver's license suspension is appropriate. It is also recognized, that driving is a privilege and that in some cases the granting of limited driving privileges, within the bounds of public safety, is warranted during this period of driver's license suspension in the form of a judicial driving permit to allow the person to continue employment and drive in connection with other necessary activities where no alternative means of transportation is available." Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1.

A circuit court may issue JDP's to allow petitioners to drive between their residence and place of employ-

ment on predetermined routes during specified times and to allow petitioners or their household members to receive alcohol or drug treatment or other medical care. (Ill. Rev. Stat. 1985, ch. 95½, pars. 6—206.1(a)(1), (a)(2).) The statute provides guidelines for the court to consider prior to issuing a JDP and prohibits issuance of a JDP in certain instances. Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1(a)(3).

The defendant here petitioned the circuit court for relief under section 6—206.1 and was granted a JDP for work-related driving on May 5, 1986. There may be a measure of irony in that having secured the benefit which section 6—206.1 offers, the defendant now attempts to challenge the constitutionality of the statutory provision on the ground that it violates the doctrine of separation of powers and the equal protection guarantee.

The defendant first argues that section 6—206.1 violates the doctrine of separation of powers, because it improperly grants the Secretary authority to review a circuit court's decision to issue a JDP. We need not address the merits of the defendant's claim that the challenged statute is unconstitutional, however, because we conclude that the defendant lacks standing to challenge the validity of section 6—206.1. A party may question the constitutional validity of a statutory provision only if he or she has sustained or is in immediate danger of sustaining some direct injury as a result of enforcement of the statute. (*People v. Ziltz* (1983), 98 Ill. 2d 38, 41; *People v. Mayberry* (1976), 63 Ill. 2d 1, 8.) There is no showing that the defendant was prejudiced by the operation of this section, for the Secretary did not object when the circuit court issued a JDP to the defendant; nor did he return the JDP to the issuing court as the statute allegedly authorizes him to do. Instead, the Secretary entered the JDP onto the petitioner's driving record so that she could reap the benefits of the statutory relief. Because

the defendant has not sustained an injury and is not in immediate danger of sustaining a direct injury as a result of enforcement of section 6—206.1, she has no standing to challenge this provision as violative of the doctrine of separation of powers.

A similar result was reached in *People v. Bombacino* (1972), 51 Ill. 2d 17, where this court refused to consider the constitutional validity of a statutory provision which authorized the chief judge of the circuit court to review a juvenile court judge's objection to removal of a defendant from the jurisdiction of the juvenile court. The court determined that the defendant was not within the class as to whom the law was allegedly unconstitutional, stating:

> "The gist of the contention is that this section grants appellate powers to the chief judge to review the decision of another judge of the same court. However, in the present case the judge presiding in the juvenile division did not object to the removal of the action and the matter was therefore not referred to the chief judge of the circuit court for decision and disposition as provided for in the statute. The defendant therefore lacks standing to challenge the constitutionality of this provision of the statute because the same is not involved in this case and the defendant was not in any way aggrieved by this provision he now claims to be unconstitutional." (51 Ill. 2d at 19-20.)

Here, as in *Bombacino*, we will not consider the validity of a statutory provision under the doctrine of separation of powers at the behest of a party who was not aggrieved by its operation, and who actually reaped the benefits of the statute which she now challenges as unconstitutional.

Although we need not and do not express an opinion on the validity of section 6—206.1 under the doctrine of separation of powers, we observe that, at the time of the

hearing before the circuit court, the relevant provision of section 6—206.1 stated:

"(d) The Secretary of State shall design and furnish the courts with an official JDP form to be issued by the clerk of the court upon direction from the court, to a successful Petitioner under this Section. Such form shall also contain a notification which shall be sent to the Secretary of State signifying the name, driver's license number and legal address of the successful petitioner, and the full and detailed description of the limitations of JDP. This information shall be entered upon the petitioner's driving record but shall be available only to the courts, police officers and the Secretary of State to be used in assessing driver performance." (Ill. Rev. Stat. 1985, ch. 95½, par. 6—206.1(d).)

Neither the State nor the defendant, however, addressed this statutory provision in their briefs. Instead, the parties discussed the constitutionality of an amendment to section 6—206.1(d), which revised the language of the last sentence of the section and added a new paragraph:

"(d) The Secretary of State shall design and furnish the courts with an official JDP form ***. Such form shall also contain a notification which shall be sent to the Secretary of State ***. This information shall be available only to the courts, police officers and the Secretary of State, except during the actual period the JDP is valid, during which time it shall be a public record.

Any submitted JDP form that contains insufficient data or fails to comply with this Section shall not be entered to the driver record but shall be returned to the issuing court indicating why the JDP cannot be so entered. A notice of this action shall also be sent to the JDP petitioner by the Secretary of State." Ill. Rev. Stat. 1986, ch. 95½, par. 6—206.1(A)(d) (as amended by Pub. Act 84—1394, §5, eff. Sept. 18, 1986).

Although the parties have briefed the question of the constitutionality of section 6—206.1, as amended, there is no indication in the record that the trial judge consid-

ered or passed upon the constitutionality of this section as amended, which did not even take effect until four months after the hearing. This court has held that "[t]he pleading of constitutional questions does not alone invest us with jurisdiction to consider them on appeal; the determination of such questions in the form of a ruling thereon by the court below must appear in the record, and where there is nothing in the order of the court which discloses that the constitutional questions were passed on, we will decline to consider them on appeal." *Beatrice Foods Co. v. Lyons* (1957), 12 Ill. 2d 274, 283.

The defendant also asserts that section 6—206.1 unconstitutionally discriminates against out-of-State residents in violation of the equal protection clause of the Federal and State Constitutions. She claims that nonresident offenders, unlike resident first-time offenders, may not receive relief to drive on Illinois roadways, because neither section 6—206.1 nor any other portion of the Vehicle Code specifically authorizes nonresidents to apply for JDP's. We observe that the defendant here is a resident of Illinois who petitioned for and received a JDP from the circuit court of Kane County. The defendant does not claim that she is a victim of the alleged invidious classification or that she was unfavorably affected by the discrimination of which she complains. (See *People v. Boykin* (1983), 94 Ill. 2d 138; *City of Chicago v. R. Zwick Co.* (1963), 27 Ill. 2d 128.) Instead, she poses a theoretical inequality and asks this court to determine the constitutionality of the statute as an abstract question of law. We state again that a person may not challenge a statute on the ground that it creates discriminatory classifications in violation of the equal protection guarantee unless that person is a member of the class allegedly being discriminated against. (*People v. Boykin* (1983), 94 Ill. 2d 138, 147 (the State has no standing to assert that a particular construction of a statute would deprive a defendant of

equal protection of the laws); *Leno v. St. Joseph Hospital* (1973), 55 Ill. 2d 114 (adult plaintiffs have no standing to assert that statute discriminates against minors).) This court will not consider the constitutionality of section 6—206.1 because the party asserting the invalidity of such provision is not in any way aggrieved by its operation, and "[o]ne of the most firmly established doctrines in the field of constitutional law is that a court will ordinarily inquire into the constitutionality of a statute only to the extent required by the case before it, and will not formulate a rule broader than that necessitated by the precise situation in question." *Grasse v. Dealer's Transport Co.* (1952), 412 Ill. 179, 201.

We hold that the summary suspension procedure established by section 11—501.1 is constitutional under the equal protection and due process clauses of the United States and the Illinois Constitutions and hold that the defendant lacks standing to challenge the constitutionality of section 6—206.1 of the Illinois Vehicle Code. Accordingly, the judgment of the circuit court of Kane County is reversed and cause remanded for further proceedings not inconsistent with this judgment.

*Reversed.*