Docket Nos. 82308, 82309, 82310, 82311 cons.–Agenda 

30–May 1998.

THE PEOPLE OF THE STATE OF ILLINOIS, Appellant, v. 

 GEORGE R. FISHER 
et al.
, Appellees.

Opinion filed December 17, 1998.

JUSTICE McMORROW delivered the opinion of the court:

The question presented in this consolidated appeal is whether the statutory summary suspension of driving privileges set forth in sections 6–208.1(a)(3) and 6–208.1(g) of the Illinois Vehicle Code (Code) (625 ILCS 5/6–208.1(a)(3), (g) (West 1996)) violates the state and federal constitutional guarantees of equal protection and due process. For the following reasons, we hold that it does not.

BACKGROUND

Illinois' implied consent statute, section 11–501.1 of the Code (625 ILCS 5/11–501.1 (West 1996)), provides that any individual driving on an Illinois public highway who is arrested for driving under the influence of alcohol (625 ILCS 5/11–501 (West 1996)) is deemed to have consented to chemical testing of blood, breath, or urine to determine the content of alcohol in his or her blood. The statute grants the arrested driver the right to withdraw this implied consent and refuse to be tested. 
People v. Wegielnik
, 152 Ill. 2d 418, 427-28 (1992). The implied consent statute also provides, however, that refusal to submit to chemical testing will result in the administrative suspension of the arrested individual's driver's license.

When originally enacted, the implied consent statute authorized license suspensions only for those drivers who refused to submit to chemical testing and, in general, only following a hearing challenging the suspension. Later amendments eliminated the requirement of a pre-suspension hearing and expanded the suspension provisions of section 11–501.1 to include drivers who submit to chemical testing which reveals a blood-alcohol content at, or above, the legal limit. See L. Davis, 
Application of the Illinois Summary Suspension Law and Constitutional Implications
, 76 Ill. B.J. 494 (1988). Thus, section 11–501.1 authorizes the administrative, summary suspension of an individual's driver's license when that individual has been lawfully arrested for driving under the influence of alcohol and has either refused to submit to chemical testing to determine blood-alcohol content, or has submitted to, and failed, such testing. The statutory summary suspensions authorized by section 11–501.1, whether for refusing or failing chemical testing, are civil in nature and are not part of the criminal prosecution for the offense of driving under the influence of alcohol. 
People v. Gerke
, 123 Ill. 2d 85, 93-95 (1988).

The length of the administrative suspension which is imposed under section 11–501.1 depends upon the individual driver's past offenses and whether the driver submitted to chemical testing, or refused to submit to chemical testing, at the time of the arrest. Pursuant to section 6–208.1(a)(3) of the Code, if a driver who is not a “first offender” refuses to submit to chemical testing, the driver will have his or her driving privileges suspended for a period of two years. 625 ILCS 5/6–208.1(a)(3) (West 1996).
(footnote: 1) However, if a driver who is not a “first offender” submits to chemical testing which discloses a blood-alcohol content at, or above, the legal limit, the driver will have his or her driving privileges suspended for only one year. 625 ILCS 5/6–208.1(a)(4) (West 1996). A “first offender” is defined in general under the Code as any person who has not had a previous conviction for driving under the influence, court assigned supervision for driving under the influence, or statutory summary suspension of driving privileges within five years prior to the date of the current offense. 625 ILCS 5/11–500 (West 1996).

The Code permits drivers whose privileges have been suspended under section 11–501.1 to seek driving relief during the suspension period in limited circumstances. If the driver is not a first offender, and his or her driving privileges have been suspended after taking a chemical test that revealed a blood-

alcohol content at, or above, the legal limit, the Secretary of State may issue the driver a restricted driving permit after 90 days from the effective date of the suspension. 625 ILCS 5/6–208.1(h) (West 1996). A restricted driving permit is issued under the discretionary authority of the Secretary of State and allows a person to drive on a limited basis for employment, medical or educational purposes. 625 ILCS 5/6–205(c) (West 1996). The Secretary of State will not issue a restricted driving permit unless the driver proves the lack of a driver's license is causing undue hardship, there is no alternative means of transportation, and the issuance of the permit will not endanger the public safety and welfare. 625 ILCS 5/6–205(c) (West 1996); 
Murdy v. Edgar
, 103 Ill. 2d 384, 391-92 (1984). However, under section 6–208.1(g) of the Code, if the driver is not a first offender, and his driving privileges have been suspended after refusing to submit to a chemical test, the Secretary of State “shall not issue a restricted driving permit.” 625 ILCS 5/6–208.1(g) (West 1996).
(footnote: 2) No other driving relief is available to the driver who is not a first offender and who refused to submit to chemical testing.

The defendants in the case at bar, George Fisher, Ovanes Mikaelian and Diana Gaynor, were arrested in separate incidents for the criminal offense of driving under the influence of alcohol (625 ILCS 5/11–501 (West 1996)). None of the defendants were ultimately convicted of driving under the influence of alcohol. At the time of their arrest, each defendant refused the request of the arresting officer to submit to chemical testing to determine blood alcohol content. In addition, each defendant was not a first offender as defined in section 11–500 of the Code. Accordingly, under sections 6–208.1(a)(3) and 6–208.1(g) of the Code, each defendant was subject to a two-year suspension of his or her driver's license with no availability of hardship relief.

In separate proceedings in the circuit court of Cook County, the defendants each filed a petition to rescind the summary suspension of their driving privileges. See 625 ILCS 5/2–118.1 (West 1996). Gaynor's petition to rescind was filed on March 13, 1996, and denied by the circuit court on May 6, 1996. Mikaelian's petition to rescind was also denied on May 6, 1996. Fisher's petition to rescind was filed on August 23, 1996.

On May 31, 1996, Mikaelian filed a motion for rehearing of his petition to rescind in which he claimed that the statutory summary suspension of his driver's license was unconstitutional. On August 16, 1996, Gaynor filed a motion to vacate the circuit court's order denying her petition. She too alleged that the statutory summary suspension of her driver's license was unconstitutional. On August 29, 1996, a hearing was held before the circuit court on Mikaelian's motion for rehearing. The circuit court, 
sua sponte
, consolidated the defendants' three cases for purposes of issuing a decision on Mikaelian's motion for rehearing, Gaynor's motion to vacate, and Fisher's petition to rescind.

On October 29, 1996, the circuit court entered a consolidated memorandum opinion and order which held that the license suspensions imposed on the defendants were unconstitutional in their entirety and which ordered the suspensions rescinded, 
nunc pro tunc
, to their effective dates. The circuit court first held that section 6–208.1(g), which denies all hardship relief for non-first offenders who refuse to submit to chemical testing, violates the equal protection guarantee of the federal and state constitutions. The circuit court concluded that allowing hardship relief for non-

first offenders who fail chemical testing but not for those who refuse testing, is “irrational and bears no relationship to the legislative goal of public safety.” The circuit court also held that while section 6–208.1(a)(3) “standing alone” was constitutionally valid, “the two year summary suspension in combination with the lack of any hardship relief during the entire period *** constitutes a denial of due process.”

The circuit court stayed its order rescinding the defendants' suspensions pending appeal by the State. The State appealed each of the defendants' cases directly to this court. 134 Ill. 2d R. 302(a). We allowed the State's motion to consolidate the defendants' cases for review.

ANALYSIS

Statutes are presumed constitutional. The party challenging the validity of a statute has the burden of clearly establishing that it is unconstitutional. 
People v. Inghram
, 118 Ill. 2d 140, 146 (1987). “ `[I]t is our duty to construe acts of the legislature so as to uphold their constitutionality and validity if it can be reasonably done, and, further, that if their construction is doubtful, the doubt will be resolved in favor of the validity of the law attacked.' [Citations.] ” 
Inghram
, 118 Ill. 2d at 146. The constitutionality of a statute is a question of law which we review 
de novo
. 
Brown's Furniture, Inc. v. Wagner
, 171 Ill. 2d 410, 420 (1996).

The defendants maintain that their license suspensions are unconstitutional on both equal protection and due process grounds. We turn first to the defendants' equal protection arguments.

Equal Protection

A

The defendants contend that the distinction which section 6–208.1(g) makes between drivers who submit to, and fail, chemical testing and drivers who refuse to submit to chemical testing is irrational and unrelated to the purpose of the summary suspension laws. The defendants note that under the Code, if a driver who is not a first offender submits to, and fails, chemical testing, he or she may obtain hardship relief during the period of the license suspension in the form of a restricted driving permit. 625 ILCS 5/6–208.1(h) (West 1996). In addition, the driver who fails chemical testing remains eligible for a restricted driving permit even if his or her license is ultimately revoked because of a conviction for driving under the influence of alcohol. 625 ILCS 5/6–205(c) (West 1996). On the other hand, under section 6–208.1(g) of the Code, if a driver who is not a first offender refuses to submit to chemical testing, he or she may not obtain any form of hardship relief. This remains true even if the driver is not convicted of driving under the influence of alcohol.

The defendants maintain that the purpose of the summary suspension laws is to promote highway safety, and further, that the driver whose license is revoked because of a conviction for driving under the influence of alcohol may generally be deemed to pose a greater risk to highway safety than the driver who is not convicted of such conduct. The defendants contend that it is arbitrary and irrational to allow the more dangerous, convicted drunk driver to return to the public highways during the suspension period, while forbidding the driver who refused testing and was found not guilty of driving under the influence from doing so. Thus, according to the defendants, section 6–208.1(g) bears no rational relationship to the goal of promoting highway safety, and therefore, violates the federal and state constitutional guarantee of equal protection (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2).

This court applies the same analysis to equal protection claims brought under both the Illinois and United States Constitutions.
 Jacobson v. Department of Public Aid
, 171 Ill. 2d 314, 322 (1996). The constitutional right to equal protection of the laws requires the government to treat similarly situated persons in a similar manner. 
People v. Warren
, 173 Ill. 2d 348, 361 (1996). The guarantee of equal protection “does not preclude the State from enacting legislation that draws distinctions between different categories of people, but it does prohibit the government from according different treatment to persons who have been placed by a statute into different classes on the basis of criteria wholly unrelated to the purpose of the legislation.” 
Jacobson
, 171 Ill. 2d at 322.

The parties agree that section 6–208.1(g) does not impinge upon a fundamental right or suspect class and, therefore, that the distinction which the legislature has drawn between those drivers who fail chemical testing, and those drivers who refuse testing, need only satisfy the rational basis test. Under the rational basis test we must inquire “whether the method or means employed in the statute to achieve the stated goal or purpose of the legislation is rationally related to that goal.” 
Jacobson
, 171 Ill. 2d at 323. “[I]f any set of facts can reasonably be conceived to justify the [statutory] classification, it must be upheld.” 
Jacobson
, 171 Ill. 2d at 324.

The ultimate goal of the summary suspension laws is to improve highway safety. 
People v. Wegielnik
, 152 Ill. 2d 418, 425 (1992). Imposing a “swift and certain” license suspension upon drivers who submit to, and fail, chemical testing furthers this goal by providing a direct means of removing clearly dangerous drivers from the highways and by creating an effective deterrent to drinking and driving. L. Davis, 
Developments in the Illinois Summary Suspension Law
, 79 Ill. B.J. 16, 16 (1991), citing 
Deterrence of Drunk Driving and Role of Sobriety Check Points and Administrative License Revocation
, National Transportation Safety Board, Report SS8401 (1984).

The goal of improving highway safety is also furthered, however, by imposing an administrative license suspension upon those drivers who are lawfully arrested for driving under the influence of alcohol and who refuse to submit to chemical testing for blood-alcohol content. As this court has explained,

“The implied-consent statute serves the legislative purpose of promoting highway safety by assisting in the determination of whether drivers suspected of intoxication are in fact under the influence of alcohol. (
People v. Rolfingsmeyer
 (1984), 101 Ill. 2d 137, 139.) The threat of summary suspension for refusing to take a blood-alcohol test motivates drivers to take the test, thereby allowing the State to obtain objective evidence of intoxication.”
 Wegielnik
, 152 Ill. 2d at 425.

See also 
People v. Esposito
, 121 Ill. 2d 491, 510 (1988); 7A Am. Jur. 2d 
Automobiles & Highway Traffic
 §133 (1997); 
People v. Frazier
, 123 Ill. App. 3d 563, 566 (1984) (“[though constitutionally permissible under 
Schmerber v. California
, 384 U.S. 757, 16 L. Ed. 2d 908, 86 S. Ct. 1826 (1966),] [t]he legislature has found involuntary tests distasteful and has chosen instead to permit drivers to refuse to take tests, to withdraw their implied consent, but bear the consequences that may flow from that decision”).

The defendants' contention that it is irrational to eliminate hardship relief for drivers who refuse to submit to chemical testing fails to account for the fact that the summary suspension laws work in more than one way to achieve the ultimate goal of improving highway safety. The defendants assume that the only way in which the elimination of hardship relief can further highway safety is if that sanction is imposed upon drivers who have clearly demonstrated that they are a safety risk, 
i.e.
, those drivers who have failed chemical testing or have been convicted of driving under the influence. However, the elimination of hardship relief can also further highway safety when applied to drivers who refuse chemical testing. The threat that hardship relief will be eliminated for refusing chemical testing, like the threat of the summary suspension itself, provides arrested drivers with a strong incentive to submit to testing for blood-alcohol content. This, in turn, promotes highway safety. 
Wegielnik
, 152 Ill. 2d at 425; see also W. Syers, 
The Illinois Implied Consent Law: Reality and Reform
, 67 Ill. B.J. 276, 280-81, 283 (1979) (noting the need for strong incentives to induce arrested drivers to submit to chemical testing). Thus, when viewed as a means of providing motivation for non-first offenders to submit to testing to determine blood-alcohol content, the distinction which section 6–208.1(g) draws between those drivers who submit to chemical testing and those drivers who refuse is neither irrational nor arbitrary.

We note, moreover, that accepting the defendants' equal protection argument would undermine the long-standing practice of using license suspensions as a sanction to motivate drivers to submit to chemical testing for blood-alcohol content. The defendants contend that eliminating hardship relief for those drivers who refuse to submit to chemical testing but not for those who fail chemical testing is unconstitutional, because those drivers who fail chemical testing pose the greater risk to public safety. If this argument were correct, then logically, the state would be required to impose the longest period of license suspension upon the driver who fails chemical testing, because that driver poses the greater risk to highway safety and because the longer suspension would keep that driver off the highways for a longer period of time. Clearly, however, if the longer suspension were imposed upon those drivers who submit to, and fail, chemical testing, arrested drivers would never have any incentive to submit to chemical testing. We do not believe that either the federal or state constitution requires such a result. See also 
Callan v. Commonwealth
, 19 Pa. Commw. 635, 639, 339 A.2d 163, 165 (1975) (“[I]f we were to hold that the one who refused the test could not be treated more severely, the clear legislative intent to encourage drivers to take the test would obviously be thwarted”).

In addition, we note that the defendants have cited no authority in support of their argument that the right to equal protection of the laws is violated by eliminating hardship relief for drivers who refuse to submit to chemical testing but not for those who fail such testing. Our research reveals that courts in other jurisdictions have uniformly rejected this proposition. See, 
e.g.
, 
Burnett v. Department of Licensing
, 66 Wash. App. 253, 832 P.2d 1321 (1992) (upholding two-year license suspension with no availability of hardship relief); 
DeScala v. Motor Vehicle Division of the Department of Revenue
, 667 P.2d 1360 (Colo. 1983); 
Walker v. Department of Motor Vehicles
, 274 Cal. App. 2d 793, 79 Cal. Rptr. 433 (1969); 
Gableman v. Hjelle
, 224 N.W.2d 379 (N.D. 1974); 
In re McCain
, 84 N.M. 657, 660, 506 P.2d 1204, 1207-08 (1973). As one court has observed,

“Although it could be argued that conviction for DUI ought to carry an equally rigorous suspension [120 days with no hardship relief], it is for the Legislature, not the courts, to determine the relative degrees of opprobrium attached to these differing circumstances. In any event, a judgment of conviction, unlike refusal to take a test, carries a whole host of potential sanctions–including fines, confinement and other punitive or corrective measures–in addition to license suspension. It is not irrational to allow limited driving privileges in conjunction with such other sanctions.” 
State v. Breed
, 111 Idaho 497, 501, 725 P.2d 202, 206 (App. 1986).

See also 
Guerrero v. Ryan
, 272 Ill. App. 3d 945, 951-52 (1995) (suspension of driver's license under Safety Responsibility Law did not violate right to equal protection); 
Murray v. Thorneycroft ex rel. Arizona
, 131 Ariz. 156, 639 P.2d 346 (App. 1981); 
Spencer v. State, Department of Public Safety
, 315 So. 2d 912 (La. App. 1975); 
Heer v. Department of Motor Vehicles
, 252 Or. 455, 450 P.2d 533 (1969).

The State of Illinois “plainly has the right to offer incentives for taking a test that provides the most reliable form of evidence of intoxication for use in subsequent proceedings.” 
Mackey v. Montrym
, 443 U.S. 1, 19, 61 L. Ed. 2d 321, 335, 99 S. Ct. 2612, 2621 (1979). Section 6–208.1(g) provides such an incentive. Under section 6–208.1(g), non-first offenders who refuse to submit to chemical testing are ineligible for hardship relief, while non-first offenders who do submit to chemical testing may receive hardship relief. This classification is rationally related to the legitimate governmental purpose of improving highway safety and, therefore, is constitutionally valid.

B

The defendants raise a second equal protection challenge to section 6–208.1(g) which was not considered by the circuit court. The defendants note that, as presently enacted, section 6–208.1(g) applies only to those drivers who are 21 years of age and older. While non-first offenders who refuse chemical testing and who are under 21 are subject to a two-year license suspension, they may, under the provisions of the Code, receive hardship relief. 625 ILCS 5/6–208.2(f) (West 1996).

The defendants maintain that non-first offenders who are under 21 generally present more of a risk to highway safety than non-first offenders who are 21 and older. As with their initial equal protection argument, the defendants contend that it is irrational and arbitrary to permit the more dangerous driver to return to the highways during the period of the license suspension, while forbidding the less dangerous driver from doing so. Therefore, according to the defendants, section 6–208.1(g) creates an arbitrary, age-based classification which is wholly unrelated to the legislative purpose of improving highway safety.

We note that the defendants have offered no authority, either in the circuit court or in their briefs to this court, to support the assertion that non-first offenders under the age of 21 present more of a risk to highway safety than non-first offenders 21 and older. Recognizing this, the defendants ask this court to take judicial notice that non-first offenders under 21 pose the greater risk to highway safety. We cannot do so. Courts may take judicial notice of matters which are commonly known, or, if not commonly known, are readily verifiable from sources of indisputable accuracy. 
Murdy v. Edgar
, 103 Ill. 2d 384, 394 (1984). A cursory examination of relevant, if not indisputable, authority reveals that it is impossible to readily confirm that non-first offenders under the age of 21 pose the greater risk to highway safety. See, 
e.g.
, National Commission Against Drunk Driving, The Century Council, 
Young Drivers/Legal Drinkers: A National Agenda
 (1994) (the group of drivers aged 21 to 34 is the group least affected by conventional drunk driving countermeasures, and in 1992, was responsible for more alcohol-related fatalities than any other age group); R. Hingson, 
Prevention of Drinking and Driving
, 20 Alcohol Health and Research World 219 (1996) (between 1982 and 1995, alcohol-related traffic deaths declined among people aged 15 to 20 but increased among persons 21 and over).

The burden is on the defendants to rebut the presumption that section 6–208.1(g) is constitutional and “to introduce evidence which demonstrates that the statute is unconstitutional.” 
People v. Esposito
, 121 Ill. 2d 491, 497 (1988). Because the defendants have failed to present any authority which would establish that non-first offenders under 21 present more of a risk to highway safety than non-first offenders who are 21 and older, the essential, underlying premise of their equal protection argument is missing. Accordingly, we do not consider this argument further.

Due Process

Before considering the merits of the defendants' due process claims, we must clarify the nature of the issues presented. In its memorandum opinion and order, the circuit court held that the statutory summary suspension set forth in sections 6–208.1(a)(3) and 6–208.1(g) “constitutes a denial of due process.” In reaching this conclusion, the circuit court relied on the analysis employed by this court in
 People v. Esposito
, 121 Ill. 2d 491 (1988).

At issue in 
Esposito
 was whether Illinois' statutory summary suspension scheme, as it existed at the time of that decision, violated the constitutional guarantee of procedural due process because it failed to provide arrested drivers with an evidentiary hearing prior to imposing the license suspension. To determine whether a presuspension hearing was constitutionally mandated, the 
Esposito
 court applied the balancing test adopted by the United States Supreme Court in 
Mathews v. Eldridge
, 424 U.S. 319, 47 L. Ed. 2d 18, 96 S. Ct. 893 (1976). The 
Eldridge
 balancing test requires courts to consider three factors: “[f]irst, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.”
 Eldridge
, 424 U.S. at 335, 47 L. Ed. 2d at 33, 96 S. Ct. at 903. After weighing the 
Eldridge
 factors, the 
Esposito
 court concluded that a presuspension hearing was not constitutionally required. 
Esposito
, 121 Ill. 2d at 504-11; see also 
Mackey v. Montrym
, 443 U.S. 1, 61 L. Ed. 2d 321, 99 S. Ct. 2612 (1979) (applying 
Eldridge
 test and upholding Massachusetts' summary suspension law).

The circuit court in the case at bar concluded that sections 6–208.1(a)(3) and 6–208.1(g) are unconstitutional based upon its application of the 
Eldridge
 balancing test employed in 
Esposito
. Despite this fact, the circuit court did not specify whether the suspension provisions at issue here are unconstitutional because they do not afford the arrested driver a presuspension hearing. Indeed, the circuit court opinion makes no mention of any procedural defects in the suspension provisions or any mention of what additional or substitute procedures might be constitutionally required. Instead, the court's opinion simply concludes:

“Therefore, this Court agrees with the defendants that in balancing the private interest affected against the government's interest in public safety, the balance of these interests has been substantially and unconstitutionally changed with the adoption of the July 21, 1995 amendment to 5/6–208.1 (G) [eliminating the availability of hardship relief]. *** Wherefore, this Court specifically finds that the two year summary suspension in combination with the lack of any hardship relief during the entire period as provided for in the amended version of the statute constitutes a denial of due process ***.”

As the State points out, the circuit court's failure to discuss any procedural deficiencies in sections 6–208.1(a)(3) and 6–208.1(g) suggests that the court might have intended to find that the two-

year suspension with no availability of hardship relief violated the defendants' 
substantive
 due process rights, rather than their 
procedural
 due process rights.

In their due process arguments before this court, the defendants have essentially repeated the circuit court's reasoning. At oral argument, counsel for defendants Fisher and Mikaelian explained:

“We are not arguing here that the defendants in this situation have a right to a pre-deprivation hearing, in other words, a pre-suspension hearing. We are arguing that certain changes that have occurred in the Illinois summary suspension law since this court rendered its decision in 
People v. Esposito
 as well as 
People v. Gerke
, [123 Ill. 2d 85 (1988)] have 
substantively changed the balance of interests
 that the court mandated under the 
Esposito
 case and have resulted, at least in our due process analysis, in the unconstitutionality of the law.” (Emphasis added.)
(footnote: 3)
 In light of the foregoing, we offer two points of clarification. First, although the defendants discuss 
Esposito
 and the 
Eldridge
 balancing test, they do not contend that they were constitutionally entitled to a presuspension hearing. Consequently, we do not consider whether sections 6–208.1(a)(3) and 6–208.1(g) are unconstitutional because drivers who are subject to those provisions are not provided pre-suspension hearings. Second, the 
Eldridge
 balancing test is a procedural due process test. We reject any suggestion that the 
Eldridge
 balancing test is to be employed in substantive due process analysis.

A

The defendants raise a procedural due process argument which is separate from the question of whether they were constitutionally entitled to receive a presuspension hearing. The defendants allege that, on its face, Illinois' statutory summary suspension scheme violates the due process guarantee of the federal and state constitutions (U.S. Const., amend. XIV; Ill. Const. 1970, art. I, §2) because it does not insure that drivers will receive prompt post-suspension hearings. In 
People v. Gerke
, 123 Ill. 2d 85 (1988), this court considered how long a post-suspension hearing could be delayed before a due process violation would occur:

“The question [the driver] poses is, How long after the suspension notification should a hearing be held in order to protect the individual's due process rights? Under the terms of the statute (Ill. Rev. Stat. 1985, ch. 95½, par. 11–501.1(g)) a summary suspension does not become effective until the 46th day following the date of the notification of the suspension. A hearing on the suspension, when requested, is to be conducted `[w]ithin 30 days after receipt of the written request or the first appearance date on the Uniform Traffic Ticket.' (Ill. Rev. Stat. 1985, ch. 95½, par. 2–118.1(b).) The first appearance date on the Uniform Traffic Ticket must be not less than 14 days but within 49 days after the date of arrest, whenever practicable. (107 Ill. 2d R. 504.) Thus, in most cases, the summary suspension hearing will be held not later than three days after the suspension is to become effective. Although we express no opinion as to how long a post-suspension hearing may be delayed without violating due process, a three-day delay is not nearly long enough to implicate the due process clause.” 
Gerke
, 123 Ill. 2d at 91.

Supreme Court Rule 504 has been amended since 
Gerke
 was decided to provide that the first appearance date on the Uniform Traffic Ticket must be not less than 14 days but within 60 days after the date of the arrest. 166 Ill. 2d R. 504. Thus, it is now possible that as many 14 days may elapse between the time the suspension goes into effect and the time the hearing on the suspension takes place. The defendants claim that this time frame does not insure drivers a constitutionally prompt post-suspension hearing.

At some point, a delay in a post-deprivation hearing may, in itself, become a constitutional violation. 
Cleveland Board of Education v. Loudermill
, 470 U.S. 532, 547, 84 L. Ed. 2d 494, 507, 105 S. Ct. 1487, 1496 (1985). To determine how long a post-

suspension hearing may be constitutionally delayed, “it is appropriate to examine the importance of the private interest and the harm to this interest occasioned by delay; the justification offered by the Government for delay and its relation to the underlying governmental interest; and the likelihood that the interim decision may have been mistaken.” 
Federal Deposit Insurance Corp. v. Mallen
, 486 U.S. 230, 242, 100 L. Ed. 2d 265, 279, 108 S. Ct. 1780, 1788 (1988).

Case law has established that drivers have a strong interest in the continued possession of their drivers' licenses; that the risk of error in the initial decision to suspend the license of a driver arrested for driving under the influence is insubstantial; and that the state has a compelling interest in highway safety. 
Esposito
, 121 Ill. 2d at 506-11. It is also clear that drivers facing summary suspension of their driving privileges are provided extensive judicial hearings (see 625 ILCS 5/2–118.1 (West 1996)) and that the possible 14-day delay can be attributed to the need to manage those hearings fairly and efficiently (see, 
e.g.
, ILCS Ann. R. 504, Committee Comments, at 34 (Smith-Hurd 1993)). Weighing these factors, we conclude that the possibility of a 14-day delay between the effective date of the suspension and the date of the hearing does not render the statutory summary suspension scheme unconstitutional on its face. See 
Loudermill
, 470 U.S. at 547, 84 L. Ed. 2d at 507, 105 S. Ct. at 1496 (delay of nine months between discharge of public employee and conclusion of administrative proceedings not unconstitutional where the delay stemmed in part from the thoroughness of the procedure); 
United States v. Eight Thousand Eight Hundred & Fifty Dollars ($8,850) in United States Currency
, 461 U.S. 555, 76 L. Ed. 2d 143, 103 S. Ct. 2005 (1983) (18-month delay between seizure of currency and the filing of a civil forfeiture proceeding not unconstitutional); 
Jones v. City of Gary, Indiana
, 57 F.3d 1435, 1444 (7th Cir. 1995) (three-month delay between firefighter's suspension from employment and termination hearing not unconstitutional).

B

The defendants also allege that the summary suspension set forth in sections 6–208.1(a)(3) and 6–208.1(g) is arbitrary and unrelated to the legislative goal of improving highway safety, and hence, violates their substantive due process rights. “The standard for determining whether substantive due process requirements have been met is to examine ` “whether the statute is reasonably designed to remedy the evils which the legislature has determined to be a threat to the public health, safety and general welfare.” ' [Citation.]” 
People v. Reed
, 148 Ill. 2d 1, 11 (1992). Under this standard, a statute will be upheld if it is rationally related to a legitimate state purpose. 
Reed
, 148 Ill. 2d at 11. We have explained elsewhere in this opinion that the two-year suspension with no hardship relief provides arrested drivers with an incentive to submit to testing for blood-alcohol content and, therefore, is rationally related to the legitimate state goal of promoting highway safety. Accordingly, we conclude that sections 6–208.1(a)(3) and 6–208.1(g) do not violate the defendants' substantive due process rights.

CONCLUSION

For the foregoing reasons, the judgment of the circuit court is reversed. The cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

FOOTNOTES
1:     
Section 6–208.1(a)(3) has recently been amended. Section 6–208.1(a)(3) now provides that a three-year license suspension will be imposed upon drivers who are not “first offenders” and who refuse to submit to chemical testing. Pub. Act 90–738, eff. January 1, 1999 (amending 625 ILCS 5/6–208.1(a)(3) (West 1996)). This amendment is not at issue in this appeal.

2:     
Section 6–208.1(g) has also recently been amended. Section 6–208.1(g) now states that a restricted driving permit may be issued to the driver “if at least 2 years have elapsed since the effective date of the statutory summary suspension.” Pub. Act 90–738, eff. January 1, 1999 (amending 625 ILCS 5/6–208.1(g) (West 1996)). This amendment is not at issue in this appeal.

3:     
Counsel for defendant Gaynor did not present an oral argument. However, nothing in the very limited due process portion of Gaynor's three-page brief contradicts the position taken by Fisher and Mikaelian.