THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. GEORGE TOWNS, Defendant-Appellant.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. RODERICK TURNER, Defendant-Appellant.

Second District    Nos. 2—93—1376, 2—94—0111 cons.

Opinion filed February 24, 1995.—Rehearing denied March 29, 1995.

Fred M. Morelli, Jr., of Law Offices of Morelli & Cook, of Aurora, and Vincent C. Argento, of Elgin, for appellant George Towns.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers and Lisa A. Hoffman, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE BOWMAN delivered the opinion of the court:

The above-titled cases have been consolidated for decision, each having raised a double jeopardy issue premised on similar facts and circumstances. Both appeals are taken pursuant to Supreme Court Rule 604(f), which permits the appeal to the appellate court of the

denial of a motion to dismiss a criminal proceeding on grounds of former jeopardy. 145 Ill. 2d R. 604(f).

The substantive facts in both cases are undisputed. In case No. 2—94—0111, defendant Roderick Turner was charged by grand jury indictment on January 5, 1993, with unlawful possession of a controlled substance (720 ILCS 570/402(a)(2) (West 1992)), unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/401(a)(2) (West 1992)), and unlawful possession of a controlled substance without a tax stamp (35 ILCS 520/10 (West 1992)). At the time of Turner's arrest on these charges, the State seized $2,165 in cash. The State then sought forfeiture of this sum under the Illinois Controlled Substances Act (Controlled Substances Act) (720 ILCS 570/505 (West 1992)) and the Drug Asset Forfeiture Procedure Act (Forfeiture Act) (725 ILCS 150/1 *et seq.* (West 1992)). Turner filed a claim contesting the forfeiture and, on August 20, 1993, a hearing was held. Following the hearing, the court ordered the cash forfeited. No appeal was taken from the forfeiture.

Following the forfeiture, Turner moved to dismiss the criminal case on grounds of double jeopardy. (725 ILCS 5/114—1(2) (West 1992); U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10.) The motion alleged that the asset forfeiture constituted punishment for double jeopardy purposes and any subsequent prosecution for the same offense violated the constitutional protection against double jeopardy. The motion to dismiss was denied, and this timely appeal followed.

In case No. 2—93—1376, defendant George Towns was charged with unlawful possession of a controlled substance (720 ILCS 570/401(c)(2) (West 1992)), unlawful possession of a controlled substance with intent to deliver (720 ILCS 570/402(c) (West 1992)), and unlawful possession of a controlled substance without a tax stamp (35 ILCS 520/10 (West 1992)). The State sought forfeiture of $411 in cash that was seized from Towns at the time of his arrest. Towns did not file a claim to the money, and it was ordered forfeited nonjudicially under section 6 of the Forfeiture Act (725 ILCS 150/6 (West 1992)).

The criminal case proceeded to a bench trial, and Towns was found guilty of possession of a controlled substance and not guilty of the other two charges. Prior to sentencing, Towns, like Turner, filed a motion to dismiss on grounds of double jeopardy. (725 ILCS 5/114—1(2); U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10.) The motion contained the same allegations as those made in Turner's motion. The trial court denied the motion to dismiss, and this timely appeal followed.

On appeal, defendants contend that a reading of the Supreme Court's recent holding in *Austin v. United States* (1993), 509 U.S.

602, 125 L. Ed. 2d 488, 113 S. Ct. 2801, leads inescapably to the conclusion that asset forfeitures under the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 1992)) constitute punishment for double jeopardy purposes. Defendants acknowledge that the Illinois Supreme Court recently confronted this issue in *People v. 1988 Mercury Cougar* (1992), 154 Ill. 2d 27, where it held that a civil forfeiture following a criminal prosecution for the same offense does not violate the double jeopardy clause. Defendants, however, maintain that because *Austin* and its progeny establish that forfeitures under a nearly identical Federal statute are punishment, *Mercury Cougar*'s holding is no longer valid.

In response, the State argues that (1) *Austin* is inapplicable to the present cases because its conclusion that asset forfeitures are punishment arose in the context of an eighth amendment claim rather than a fifth amendment double jeopardy claim; and (2) even if *Austin* is applicable to the present cases, double jeopardy is not violated because the asset forfeitures and criminal charges against defendants were part of a single, coordinated prosecution. Additionally, with respect to defendant Towns, the State asserts that jeopardy never attached in the forfeiture proceeding because Towns failed to make a claim to the money which the State sought to forfeit. As a result, the State asserts, Towns was never in jeopardy in the forfeiture case and his criminal prosecution did not violate double jeopardy.

■ The double jeopardy clause of the fifth amendment to the United States Constitution reads: "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb." (U.S. Const., amend. V; see also Ill. Const. 1970, art. I, § 10 ("No person shall be *** twice put in jeopardy for the same offense").) The double jeopardy clause protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense when sought in separate proceedings. (See, *e.g., United States v. Halper* (1989), 490 U.S. 435, 440, 104 L. Ed. 2d 487, 496, 109 S. Ct. 1892, 1897; *North Carolina v. Pearce* (1969), 395 U.S. 711, 717, 23 L. Ed. 2d 656, 665, 89 S. Ct. 2072, 2076.) The third of these protections—the subject of this appeal—is deeply ingrained in the Anglo-American system of jurisprudence. (*Green v. United States* (1957), 355 U.S. 184, 187, 2 L. Ed. 2d 199, 204, 78 S. Ct. 221, 223.) "Fear and abhorrence of governmental power to try people twice for the same conduct is one of the oldest ideas found in western civilization. Its roots run deep into Greek and Roman times." *Bartkus v. Illinois* (1959), 359 U.S. 121, 151-52, 3 L. Ed. 2d 684, 706, 79 S. Ct. 676, 696 (Black, J., dissenting).

The fundamental purpose of the double jeopardy clause is to protect an accused from being forced to defend against repeated attempts to exact one or more punishments for the same offense and applies with equal force whether the first prosecution results in a conviction or an acquittal. (*Abbate v. United States* (1959), 359 U.S. 187, 198-99, 3 L. Ed. 2d 729, 736, 79 S. Ct. 666, 672-73; *United States v. $405,089.23 United States Currency* (9th Cir. 1994), 33 F.3d 1210, 1215.) The underlying principle of the protection against double jeopardy is that "a person shall not be harassed by successive trials; that an accused shall not have to marshal the resources and energies necessary for his defense more than once for the same alleged criminal acts." *Abbate v. United States* (1959), 359 U.S. 187, 198-99, 3 L. Ed. 2d 729, 736, 79 S. Ct. 666, 673, quoted in *United States Currency*, 33 F.3d at 1215.

In the present case, to determine whether the State's attempt to prosecute criminally defendants following the forfeitures contravenes the double jeopardy clause, we consider two questions: (1) did the civil forfeiture under the Act amount to a "punishment" for double jeopardy purposes?; and (2) was there a separate prosecution in each case? The criminal prosecutions in the present cases violate the double jeopardy clause only if we answer both questions in the affirmative. See *United States Currency*, 33 F.3d at 1216.

In recent cases, the United States Supreme Court has determined that a civil penalty constitutes punishment for double jeopardy purposes, despite its civil label, when the sanction, as applied, serves the goals of punishment, retribution or deterrence, rather than remediation. In *United States v. Halper* (1989), 490 U.S. 437, 104 L. Ed. 2d 487, 109 S. Ct. 1892, the Supreme Court stated: "a civil sanction that cannot fairly be said *solely* to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term." (Emphasis added.) *Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.

The *Halper* court's conclusion that a civil sanction which serves retributive or deterrent purposes constitutes a punishment regardless of whether it also has a remedial purpose was reaffirmed in *Austin v. United States* (1993), 509 U.S. 602, 125 L. Ed. 2d 488, 113 S. Ct. 2801. The issue in *Austin* was whether the excessive fines clause of the eighth amendment applied to forfeitures under 21 U.S.C. § 881 (1988), the Federal controlled substance forfeiture statute (21 U.S.C.A. § 881 (West 1981 & Supp. 1994)). Because the eighth amendment limits the government's power to punish, the central question before the court was whether the statutory forfeiture was punishment.

After tracing the long history of forfeitures in England and the United States, the court determined that a civil forfeiture stemming from a drug offense was a criminal punishment. The court observed that its decisions "consistently ha[ve] recognized that forfeiture serves, at least in part, to punish the owner" of the forfeited property. (*Austin*, 509 U.S. at 618, 125 L. Ed. 2d at 503, 113 S. Ct. at 2810, citing *Calero-Toledo v. Pearson Yacht Leasing Co.* (1974), 416 U.S. 663, 40 L. Ed. 2d 452, 94 S. Ct. 2080; *Goldsmith-Grant Co. v. United States* (1921), 254 U.S. 505, 65 L. Ed. 376, 41 S. Ct. 189; *Dobbins v. United States* (1878), 96 U.S. 395, 24 L. Ed. 637; *Peisch v. Ware* (1808), 8 U.S. (4 Cranch) 347, 2 L. Ed. 643.) The Court applied the *Halper* test of whether the statute serves at least *in part* to punish and noted that, even though it might have some remedial purpose, the statute was tied to the commission of a drug offense and focused on the culpability of the owner of the property to be forfeited. (*Austin*, 509 U.S. at 618-22, 125 L. Ed. 2d at 503-05, 113 S. Ct. at 2810-11.) The court further noted that a forfeiture of property is a fixed penalty which need not have any correlation to the damages suffered by society or to the costs of law enforcement. (*Austin*, 509 U.S. at 622, 125 L. Ed. 2d at 505, 113 S. Ct. at 2812.) In view of the statute's objectives to deter and to punish, the court stated: "we cannot conclude that forfeiture *** serves solely a remedial purpose" and held that forfeiture was a punishment, subject to the limitations of the eighth amendment's excessive fines clause. *Austin*, 509 U.S. at 622, 125 L. Ed. 2d at 505, 113 S. Ct. at 2812.

Most recently, in *Department of Revenue v. Kurth Ranch* (1994), 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937, the Supreme Court held that a financial exaction in the form of a tax imposed only on persons arrested for drug offenses can count as a separate jeopardy. The issue in *Kurth Ranch* was whether a tax on the possession of illegal drugs assessed after the State has imposed a criminal penalty for the same conduct violates the double jeopardy clause. Relying on *Halper* and *Austin*, the Court concluded the tax in issue "possessed *** an unmistakable punitive character" and held that it constituted punishment for purposes of the double jeopardy clause. *Kurth Ranch*, 511 U.S. at 783, 128 L. Ed. 2d at 781, 114 S. Ct. at 1948.

*Kurth Ranch* also concluded that a financial exaction, such as a tax imposed only on persons arrested for drug offenses, can count as a separate jeopardy even where it is coordinated with a criminal prosecution. In *Kurth Ranch*, six members of the Kurth family were arrested for cultivating marijuana on their farm. The State of Montana pursued criminal charges, civil forfeiture proceedings, and a tax collection proceeding against the Kurths; additionally, there was a

bankruptcy proceeding initiated by the Kurths themselves. The Court characterized these as "four separate legal proceedings." (*Kurth Ranch*, 511 U.S. at 772, 128 L. Ed. 2d at 774, 114 S. Ct. at 1942.) Although the three State-initiated proceedings were based on the same conduct, were pending at the same time, and were part of a coordinated attempt to close down the Kurths' marijuana operation, the Court treated them as separate proceedings for double jeopardy purposes. Finally, the Court held that the exaction of the tax after a criminal penalty had already been imposed was "the functional equivalent of a successive criminal prosecution that placed the Kurths in jeopardy a second time 'for the same offence,' " despite the fact that the proceedings were part of a single prosecutorial effort. *Kurth Ranch*, 511 U.S. at 784, 128 L. Ed. 2d at 782, 114 S. Ct. at 1948.

Several Federal and State courts have now followed the Supreme Court's lead in concluding that a criminal prosecution brought separately from a civil forfeiture proceeding will be barred under the double jeopardy clause where the civil sanction is deemed to be punishment. *United States v. $405,089.23 United States Currency* (9th Cir. 1994), 33 F.3d 1210, is particularly instructive. There, the government brought a criminal prosecution against a number of defendants along with a separate but parallel civil forfeiture action under 21 U.S.C. § 881 (1988) (21 U.S.C.A. § 881 (West 1981 & Supp. 1994)). The forfeiture action was instituted on June 17, 1991, five days after a grand jury issued an indictment in the criminal case. The court then stayed the forfeiture action pending the outcome of the criminal prosecution. On March 27, 1992, the criminal case terminated with the conviction of all defendants. The district court then granted summary judgment to the government in the forfeiture case. The defendants appealed, claiming that the civil forfeiture following their criminal convictions for the same offense violated the fifth amendment's double jeopardy clause. (*United States Currency*, 33 F.3d at 1214-15.) In addressing the defendants' claims, United States Court of Appeals for the Ninth Circuit considered (1) whether civil forfeiture under the Federal statutes constituted punishment; and (2) whether the civil forfeiture and criminal prosecution were separate proceedings.

The court answered the first question in the affirmative, relying on *Halper* and *Austin*. While acknowledging that *Austin* arose in the context of an eighth amendment claim, the ninth circuit stated that "the only fair reading of the Court's decision in *Austin* is that it resolves the 'punishment' issue with respect to forfeiture cases for purposes of the Double Jeopardy Clause." (*United States Currency*, 33 F.3d at 1219.) Because the statutes in issue served, at least in part,

retributive and deterrent functions (*Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902), the court found the conclusion "inescapable" that civil forfeitures constitute punishment under the fifth amendment. *United States Currency*, 33 F.3d at 1219.

The court also concluded that the civil forfeiture and criminal prosecution were separate proceedings. In so doing, it rejected the government's argument that although the civil and criminal proceedings are technically separate, they were part of a single, coordinated prosecution and should be treated as one. The court stated:

> "We fail to see how two separate actions, one civil and one criminal, instituted at different times, tried at different times before different factfinders, presided over by different district judges, and resolved by separate judgments, constitute the same 'proceeding.' *** We are not willing to whitewash the double jeopardy violation in this case by affording constitutional significance to the label of 'single, coordinated prosecution.' " *United States Currency*, 33 F.3d at 1216-17.

The conclusion of the ninth circuit in *United States Currency* is consistent with the decisions of the overwhelming majority of courts across the country which have confronted the issue. (See, *e.g.*, *United States v. Torres* (7th Cir. 1994), 28 F.3d 1463; *Clifft v. Indiana Department of State Revenue* (Ind. Tx. Ct. 1994), 641 N.E.2d 682 (following *Kurth Ranch*; controlled substances tax was punishment for double jeopardy purposes and could not be collected from defendant who had pleaded guilty to offense); *State v. 1979 Cadillac DeVille* (La. Ct. App. 1994), 632 So. 2d 1221 (forfeiture of automobile as derivative contraband violated double jeopardy clause even though statute served some partly remedial purpose, where forfeiture proceeding was separate from criminal proceeding (dissent filed)), *writ granted* (La. 1994), 642 So. 2d 1302; *New Mexico Taxation & Revenue Department v. Whitener* (1993), 117 N.M. 130, 869 P.2d 829 (drug tax was punishment which violated prohibition against double jeopardy where defendant had been convicted of drug offense and State failed to show tax was proportional and remedial (dissent filed)), *cert. granted* (1994), 117 N.M. 328, 871 P.2d 984; *Fant v. State* (Tex. Ct. App. 1994), 881 S.W.2d 830 (civil forfeiture was punishment even though partly remedial, barring further criminal prosecution (dissent filed), rejecting *Johnson v. State* (Tex. Ct. App. 1994), 882 S.W.2d 17, *review granted*, which held forfeiture of personal property was not overwhelmingly disproportionate penalty but instead was remedial); *State v. Clark* (1994), 124 Wash. 2d 90, 875 P.2d 613 (civil forfeiture of home and motor home was punishment under excessive fines clause but double jeopardy issue was not reached).

In view of the above-cited authorities, particularly *Halper, Austin, Kurth Ranch,* and *United States Currency,* we conclude that the forfeitures in the instant cases constituted punishments for double jeopardy purposes. A review of our State's Drug Asset Forfeiture Procedure Act (725 ILCS 150/1 *et seq.* (West 1992)) shows that it is patterned after 21 U.S.C. § 881 (1988) and should be interpreted consistently with the Federal statute. Section 2 of the Forfeiture Act states:

> "The General Assembly further finds that the federal narcotics civil forfeiture statute upon which this Act is based has been very successful in deterring the use and distribution of controlled substances within this State and throughout the country. It is therefore the intent of the General Assembly that the forfeiture provisions of this Act be construed in light of the federal forfeiture provisions contained in 21 U.S.C. 881 as interpreted by the federal courts, except to the extent that the provisions of this Act expressly differ therefrom." 725 ILCS 150/2 (West 1992).

█ Like 21 U.S.C. § 881 (1988), the objective of the Forfeiture Act is to deter criminal behavior, and its application is triggered by a criminal violation. Both the Federal statute and the Forfeiture Act provide defenses for innocent owners or interest holders in the property to be forfeited. (21 U.S.C.A. § 881(a)(4)(C) (West 1981 & Supp. 1994); 725 ILCS 150/8 (West 1992).) The innocent owner defense operates to ensure that owners of property who lacked knowledge of the drug activity are not punished by forfeiture. (See *United States v. Certain Real Property & Premises, known as 890 Noyac Road, Noyac, N.Y.* (2d Cir. 1991), 945 F.2d 1252; *People v. 1991 Chevrolet Camaro, VIN 1GFP23E9ML117842* (1993), 251 Ill. App. 3d 382.) The presence of the innocent owner defense demonstrates the Forfeiture Act's focus on the culpability of the owner and belies the State's contention that it is unmotivated by any retributive purpose. (*United States Currency,* 33 F.3d at 1221; see also *Clark,* 124 Wash. 2d at 93, 875 P.2d at 616.) In fact, our supreme court has recently acknowledged the fact that the Federal drug asset forfeiture statute is "very similar" to the Forfeiture Act. (See *People ex rel. Waller v. 1989 Ford F350 Truck* (1994), 162 Ill. 2d 78, 87.) In the wake of *Austin* and *Kurth Ranch,* we believe that a forfeiture under the Forfeiture Act constitutes punishment even though it may have some remedial purposes. We are, of course, aware that our conclusion is different from that reached by the supreme court in *People v. 1988 Mercury Cougar* (1992), 154 Ill. 2d 27. That case, however, was decided before *Austin* and *Kurth Ranch,* and, in light of those decisions, we are compelled to reach the opposite conclusion.

We also believe that the forfeiture proceedings were separate from the criminal proceedings in the instant cases. Multiple punishments for the same conduct may be permissible if imposed in the same proceeding, but are barred if imposed in separate proceedings. (*Halper*, 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892.) The State argues that the double jeopardy clause does not apply because the civil and criminal actions were part of a single, coordinated prosecution of defendants.

In arguing that the civil and criminal proceedings comprise a single, coordinated prosecution, the State attempts to garner support from *United States v. Millan* (2d Cir. 1993), 2 F.3d 17. There, arrest warrants were issued on July 30, 1991, for approximately 40 individuals including certain members of the Bottone family. Based on the same affidavit, seizure warrants were issued pursuant to the Federal civil forfeiture statute for assets connected to illegal drug activities. On August 14, 1991, an indictment was filed against the defendants charging them with participation in a massive narcotics distribution conspiracy. The same indictment included a criminal forfeiture count for properties alleged to be facilitators of, or proceeds from, drug activity. In the meantime, Alfred Bottone, Jr., filed an administrative claim challenging the government's seizure of certain assets, including a used car business. In response, on December 26, 1991, the government filed an *in rem* civil forfeiture suit against the used car business and its associated assets. In its complaint, the government incorporated the indictment by reference and exhibit.

On October 5, 1992, a superseding indictment charged that the Bottones had obtained property in excess of $100 million from the charged narcotics violations. On January 20, 1993, the Bottones entered into a stipulation whereby the government relinquished its claim to $101,000 in several bank accounts and other assets, to enable the Bottones to pay attorney fees. In return, the Bottones relinquished any claim to $240,000 in cash and certain other seized properties. The civil *in rem* suit was then dismissed. On February 23, 1993, just before the start of the criminal trial, the Bottones filed a motion to dismiss the superseding indictment on double jeopardy grounds, claiming that under *United States v. Halper* (1989), 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892, the settlement agreement constituted punishment within the meaning of the double jeopardy clause. The district court denied the motion, finding that the civil and criminal proceedings constituted a single proceeding. The court of appeals affirmed, holding that the civil forfeiture suit was part of a single, coordinated prosecution of persons involved in alleged criminal activity. *Millan*, 2 F.3d 17.

The *Millan* court noted that the civil and criminal warrants were issued the same day by the same judge; the stipulation involved not only the seized property in the civil suit but also properties named in the criminal indictment; the civil complaint incorporated the criminal indictment; and the Bottones were aware of the criminal charges against them when they entered into the stipulation. (*Millan*, 2 F.3d at 19.) The court did not find dispositive the fact that the civil and criminal cases were filed separately with different docket numbers, because the court noted that under Federal procedure this was the established practice. (*Millan*, 2 F.3d at 20.) Referring to *Halper*, the court also noted that this was not a case where the government might act abusively by seeking a second punishment where it was dissatisfied with the punishment levied in the first action; rather the actions of the government were contemporaneous. *Millan*, 2 F.3d at 20.

*Millan* was decided before *Kurth Ranch*, whose holding casts serious doubt on its continuing validity. (See *Torres*, 28 F.3d at 1465.) Indeed, it has been conclusively rejected by the ninth circuit in *United States Currency* and by the seventh circuit in *Torres*, both post-*Kurth Ranch* decisions. The court in *United States Currency* found the position adopted by *Millan* "contradicts controlling Supreme Court precedent as well as common sense." (*United States Currency*, 33 F.3d at 1216.) In a similar vein, *Torres* noted that "[c]ivil and criminal proceedings are not only docketed separately but also tried separately, and under the double jeopardy clause separate trials are anathema." *Torres*, 28 F.3d at 1465; see also *1979 Cadillac De-Ville*, 632 So. 2d at 1228-29 (distinguishing *Millan* and noting the forfeiture proceeding in *Millan* was incorporated into the criminal indictment).

For the same reasons expressed by the seventh and ninth circuits, we find the State's argument based on *Millan* unpersuasive as to defendant Turner. For other reasons, discussed below, we agree with the State's contention that defendant Towns' conviction does not violate the double jeopardy clause.

■ As to defendant Turner, the facts indicate that the civil forfeiture and criminal case were separate proceedings. The forfeiture proceeding was complete on August 20, 1992, when, following a hearing, Judge Grometer ordered the forfeiture of $2,165 seized from Turner. The criminal indictment against Turner, based on the same conduct, was not filed until January 5, 1993, and was docketed separately and assigned to a different judge. In view of *Kurth Ranch* and *United States Currency*, it is clear that the forfeiture and criminal proceedings were separate. As the Court of Appeals stated in *United States Currency*, "[a] forfeiture case and a criminal prosecu-

tion would constitute the *same* proceeding only if they were brought in the same indictment and tried at the same time." (Emphasis in original.) (*United States Currency*, 33 F.3d at 1216.) Thus, we cannot deem the civil forfeiture and criminal prosecutions in No. 2—94—0111 to be part of the same proceeding.

■ As to defendant Towns, we are presented with a different set of facts. On June 29, 1992, the Kane County State's Attorney sent Towns a notice of pending forfeiture by certified mail, in compliance with section 6 of the Forfeiture Act. (725 ILCS 150/6 (West 1992).) Towns then had 45 days from the effective date of the notice to file a verified claim with the State's Attorney, asserting his interest in the property. (725 ILCS 150/6(C)(1) (West 1992).) Towns failed to file a claim within the 45-day period, and a nonjudicial declaration of forfeiture was executed on August 17, 1992.

The State argues that Towns' failure to make a claim to the property prevented him from being made a party to the forfeiture proceeding and that, as a result, he was never in jeopardy in that proceeding. In response, Towns argues that because the property was seized from him, he had a possessory interest sufficient to place him in jeopardy in the forfeiture proceeding regardless of whether he filed a claim.

Neither party has cited, and our research has not revealed, any Illinois case addressing the effect of the failure to file a claim by the alleged owner of property which is the subject of a forfeiture. However, the seventh circuit recently confronted this question in the previously discussed case of *United States v. Torres* (7th Cir. 1994), 28 F.3d 1463. There, the property in issue was $60,000 in cash seized from Torres and another man by Federal agents in a drug arrest. Torres received notice of the impending forfeiture of the seized money but chose not to make a claim to it. The court held that Torres' failure to make a claim to the property rendered him a nonparty to the forfeiture proceeding. As a result, Torres was not in jeopardy in the forfeiture proceeding and his subsequent criminal prosecution was not barred by the double jeopardy clause. (*Torres*, 28 F.3d at 1465.) Judge Easterbrook, writing for the court, noted that "[y]ou can't have double jeopardy without a former jeopardy" and stated: "As a non-party, Torres was not at risk in the forfeiture proceeding, and '[w]ithout risk of a determination of guilt, jeopardy does not attach, and neither an appeal nor further prosecution constitutes double jeopardy.'" *Torres*, 28 F.3d at 1465, quoting *Serfass v. United States* (1975), 420 U.S. 377, 391-92, 43 L. Ed. 2d 265, 276, 95 S. Ct. 1055, 1064.

We find the reasoning of *Torres* persuasive. Despite being given

the statutorily mandated notice of the forfeiture, Towns made no claim to the money and, hence, never became a party to the proceeding. Instead of following the prescribed method for asserting his interest in the seized cash, he allowed it to be forfeited. Because he did not make himself a party to the forfeiture proceeding at the appropriate time, the forfeiture of the money "did not impose any penalty on *him* [and] *** the argument derived from *Kurth Ranch* fails." (Emphasis in original.) (*Torres*, 28 F.3d at 1466.) We therefore find that because Towns was never in jeopardy in the forfeiture proceeding, his subsequent criminal conviction does not violate the fifth amendment.

We conclude that, since a judgment of forfeiture has been entered, further prosecution of defendant Turner is barred by the constitutional prohibition against double jeopardy. In case No. 2—94—0111, the trial court's order denying defendant Turner's motion to dismiss is vacated and the criminal charges are hereby dismissed with prejudice. In case No. 2—93—1376, the conviction of defendant Towns is affirmed for the reasons stated above.

No. 2—93—1376, Affirmed.
No. 2—94—0111, Vacated; cause dismissed.

McLAREN, P.J., and GEIGER, J., concur.