THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
MICHAEL DVORAK, Defendant-Appellant.

Second District    No. 2—95—0520

Opinion filed December 13, 1995.—Rehearing denied January 9, 1996.

David E. Camic, of Camic, Johnson, Wilson & Bloom, P.C., of Aurora, for appellant.

Michael P. Coghlan, State's Attorney, of Sycamore (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE GEIGER delivered the opinion of the court:

The defendant, Michael Dvorak, appeals (145 Ill. 2d R. 604(f)) from the denial of his motion to dismiss, on the basis of double jeopardy, the cause prosecuted against him for driving under the influence of alcohol (DUI). We affirm and remand for further proceedings.

On February 4, 1994, the defendant was charged with DUI (625 ILCS 5/11—501(a)(2) (West 1992)). On that date he was also served with notice of the statutory summary suspension of his driving privilege which suspension would take place on the 46th day following the issuance of the notice of suspension. The notice was issued after the defendant submitted to a blood-alcohol concentration (BAC) test which disclosed a BAC of 0.13, a concentration which triggers the suspension of his driver's license under Illinois' implied-consent statute for a minimum of three months if he is a first offender. Under the implied-consent statute, any person who drives or is in actual physical control of a vehicle upon the public highways of this State is deemed to have given consent to such chemical testing to determine the amount of alcohol in his blood after he is arrested for DUI or a similar offense as provided by the statute. See 625 ILCS 5/11—501.1 et seq. (West 1992).

On March 22, 1994, the defendant filed a petition to rescind the summary suspension, alleging that he "was not lawfully placed under arrest" for DUI or a similar offense as defined by the statute. On the same date, the summary suspension of his driving privilege was rescinded in an agreed order.

On April 17, 1995, the defendant moved to dismiss the DUI charges, asserting that further prosecution was prohibited by the double jeopardy clauses of the United States and Illinois Constitutions. (U.S. Const., amend. V ("nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb"); Ill. Const. 1970, art. I, § 10 ("No person shall be *** twice put in jeopardy for the same offense").) He asserted, inter alia, that the rescission of the

suspension amounted to an acquittal barring further prosecution. (Since there is no report of proceedings, it is not entirely clear from the record whether defendant was then relying on the prohibition against multiple punishments or the prohibition against further prosecution after acquittal or both.)

On appeal, defendant first argues, in the light of recent decisions in the still developing law of double jeopardy, that the imposition of a statutory summary suspension of his driving privilege constitutes "punishment" barring further prosecution. (See, *e.g., People v. Towns* (1995), 269 Ill. App. 3d 907, *appeal allowed* (1995), 162 Ill. 2d 49 (forfeiture of assets sought by State in civil proceeding separate from criminal prosecution amounted to punishment and constitutional prohibition against double jeopardy barred further punishment of defendant in criminal proceeding).) In conclusory fashion and without sufficient citation to legal authority, the defendant also urges that further criminal prosecution is barred because the rescission of his summary suspension amounted to a prior "acquittal."

We first consider whether the statutory summary suspension of a driver's privilege under the implied-consent statute is a "punishment" for double jeopardy purposes which would bar further punishment or prosecution. We believe this issue is one of first impression in this jurisdiction.

■ The prohibition against double jeopardy protects against three distinct abuses: (1) a second prosecution for the same offense after acquittal; (2) a second prosecution for the same offense after conviction; and (3) multiple punishments for the same offense when sought in separate proceedings. (*Towns*, 269 Ill. App. 3d at 910, citing *United States v. Halper* (1989), 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892.) In determining whether the State is attempting to subject the defendant to multiple punishments for double jeopardy purposes despite the civil label applied to a proceeding involving the imposition of a sanction, a court must first determine whether the sanction amounted to a "punishment" for those purposes, and, second, whether there was a prosecution separate and distinct from the criminal proceeding. See *Towns*, 269 Ill. App. 3d at 911 (applying the two-part inquiry to a civil, asset forfeiture proceeding), relying on *United States v. $405,089.23 United States Currency* (9th Cir. 1994), 33 F.3d 1210.

In *United States v. Halper*, 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892, Halper had been convicted of 65 counts of making false claims for Medicare reimbursement which resulted in the government being overcharged a total of $585. He was sentenced to two years of imprisonment and fined $5,000. The government then sued

under a civil false claims statute which subjected Halper to a statutory penalty of more than $130,000. The Federal district court concluded that the penalty was barred by the double jeopardy clause's prohibition against multiple punishments. In a direct appeal to the United States Supreme Court, the question framed by the Court was whether the statutory penalty under which Halper was subject to a liability of $130,000 for false claims amounting to $585 constituted a second "punishment" for the purpose of double jeopardy analysis.

The Court recognized that the labels "civil" or "criminal" affixed either to the proceeding or to the relief imposed were not controlling in determining the applicable protection of Federal constitutional law and that "the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." (*Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 501, 109 S. Ct. at 1901.) The Court noted that a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment: "[P]unishment serves the twin aims of retribution and deterrence." *Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.

Although in passing the Court stated somewhat broadly that "a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term," the Court's holding was much narrower. (*Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.) The Court's narrow holding was that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution," and the Court acknowledged that "this inquiry will not be an exact pursuit." (*Halper*, 490 U.S. at 448-49, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.) The *Halper* Court announced "a rule for the rare case" concerning whether a monetary exaction by the government from the defendant was so disproportionate that it was the functional equivalent of a second punishment for double jeopardy purposes, rather than remedial relief whose purpose was rationally related to "making the Government whole." *Halper*, 490 U.S. at 449, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.

In *Austin v. United States* (1993), 509 U.S. 602, 125 L. Ed. 2d 488, 113 S. Ct. 2801, the Court considered whether the excessive fines clause of the eighth amendment applied to a civil asset forfeiture proceeding *in rem* triggered by a drug offense and whether the statu-

tory forfeiture was "punishment" subject to the limitations of the excessive fines clause. After reviewing the Anglo-American history of forfeitures, the Court determined that forfeitures were at least in part understood as punishment and would be so considered today, given the clear focus of the forfeiture statute on the culpability of the owner and the legislative purpose of the statute to deter and to punish. The Court stated it could not conclude that the forfeiture served solely a remedial purpose, but it concluded instead that a forfeiture under the statutory provision constituted payment to a sovereign as punishment for some offense and remanded the cause for consideration of whether the forfeiture at issue was constitutionally excessive. *Austin*, 509 U.S. at 621-22, 125 L. Ed. 2d at 505-06, 113 S. Ct. at 2812.

In *Department of Revenue v. Kurth Ranch* (1994), 511 U.S. 767, 128 L. Ed. 2d 767, 114 S. Ct. 1937, the Court next considered whether Montana's tax imposed on illegal drugs after the State imposed a criminal penalty for the same conduct violated the constitutional prohibition against successive (multiple) punishments. The question before the Court was whether the tax had "punitive characteristics that subject it to the constraints of the Double Jeopardy Clause." *Kurth Ranch*, 511 U.S. at 778-79, 128 L. Ed. 2d at 778, 114 S. Ct. at 1945.

Approaching the problem from quite the opposite direction of *Halper* (*i.e.*, whether a sanction may be fairly characterized as remedial) and after considering the unusual features of the tax overall, the Court concluded that Montana's tax was "fairly characterized as punishment." (*Kurth Ranch*, 511 U.S. at 784, 128 L. Ed. 2d at 781, 114 S. Ct. at 1948.) The Court cautioned that *Halper*'s method of determining whether the exaction was remedial or punitive simply did not work in the case of a tax statute, since taxes are usually motivated by revenue raising rather than punitive purposes and Montana was not claiming that its assessment roughly related to any actual damages caused to the State. (*Kurth Ranch*, 511 U.S. at 784, 128 L. Ed. 2d at 781, 114 S. Ct. at 1948.) The Court began its examination of the characteristics of the tax by observing that "neither a high rate of taxation nor an obvious deterrent purpose automatically marks this tax as a form of punishment." 511 U.S. at 780, 128 L. Ed. 2d at 779, 114 S. Ct. at 1946.

Among the features the Court found unusual were these: (1) the tax was conditioned on the commission of a crime; (2) it was exacted only after the taxpayer had been arrested for the conduct which gave rise to the tax obligation and had paid all related State or Federal fines and all forfeitures had been satisfied; and (3) the tax was levied

on goods that the taxpayer neither owned nor possessed when the tax was imposed (because presumably the contraband was destroyed by the State) so that it had "an unmistakable punitive character." (511 U.S. at 784, 128 L. Ed. 2d at 781, 114 S. Ct. at 1947-48.) The Court explained: "Taken as a whole, this drug tax is a concoction of anomalies, too far-removed in crucial respects from a standard tax assessment to escape characterization as punishment for the purpose of Double Jeopardy analysis." (*Kurth Ranch*, 511 U.S. at 783, 128 L. Ed. 2d at 781, 114 S. Ct. at 1948.) The Court also concluded under the circumstances that the proceeding to impose the tax amounted to "the functional equivalent of a successive criminal prosecution" that placed the defendants in jeopardy a second time for the same offense. 511 U.S. at 784, 128 L. Ed. 2d at 782, 114 S. Ct. at 1948.

Seizing on language from *Halper* taken out of context, the defendant here appears to suggest that the test to be used in determining if the summary suspension of his driving privilege is a punishment for double jeopardy purposes is whether it is a sanction "that cannot fairly be said solely to serve a remedial purpose." (*Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902.) We do not read the Supreme Court cases as requiring an inflexible test which automatically classifies a sanction as punishment unless it can fairly be said *solely* to serve a remedial purpose. The Court reiterated in *Kurth Ranch* that "whether a sanction constitutes punishment is not determined from the defendant's perspective, as even remedial sanctions carry the 'sting of punishment.' [Citation.]" (*Kurth Ranch*, 511 U.S. at 777 n.14, 128 L. Ed. 2d at 777 n.14, 114 S. Ct. at 1945 n.14.) The Court clearly recognized that civil sanctions may have some incidental deterrent or punitive effect without necessarily being "punishment" for double jeopardy purposes. Although the *Halper* Court at one point employed somewhat expansive language ("fairly said solely to serve a remedial purpose") (*Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902) which this court repeated in *People v. Towns*, 269 Ill. App. 3d at 911, that language does not comprise the holding or the test established in *Halper* and in subsequent cases, as our review of the cases has shown. Likewise, that expansive language must not be construed as the holding of *Towns*.

After *Austin* and *Kurth Ranch* were decided, this court held in *Towns* that a civil forfeiture of property, pursuant to our State drug asset forfeiture statute, constituted punishment for double jeopardy purposes, even though the statutory provision might have some remedial purposes, because the statute focused on the culpability of the claimant-owner of the property subject to forfeiture and the statute's

objectives were the deterrence of criminal behavior and retribution. (*Towns*, 269 Ill. App. 3d at 915.) In effect, this court examined the characteristics of the statutory sanction as a whole to determine whether it could be fairly characterized as punitive even though it might have some remedial purpose.

¶2 Some guiding principles may be distilled from *Halper, Austin,* and *Kurth Ranch,* each of which was decided in a different context. In determining whether a civil sanction is punishment for double jeopardy purposes, it appears that a court should conduct a particularized assessment of the characteristics of the sanction (penalty or exaction) as a whole; the purposes that it may fairly be said to serve; and whether the sanction may be "fairly characterized" as remedial or as punishment, taking into consideration its deterrent or retributive purposes, and, if helpful to the inquiry, its historical or traditional treatment.

■ The administrative statutory summary suspension of one's privilege to drive, pursuant to the implied consent statute, is not the equivalent of the forfeiture of a fundamental property right or a fine and is not punishment for double jeopardy purposes. Rather, it is clearly remedial in nature. A license to drive has long been viewed as a privilege subject to regulation and control under the police power of the State to govern traffic upon the highways, and the loss of the privilege has not been traditionally considered a punishment. (See *People v. Kobylak* (1943), 383 Ill. 432, 435.) Although a license to drive is a private property interest subject to due process protections, the interest in a driver's license, while important, does not amount to a fundamental property right in the constitutional sense (see *People v. Lindner* (1989), 127 Ill. 2d 174, 179). The suspension of the privilege to drive, though undoubtedly inconvenient to the driver, is not the curtailment of a fundamental right. (*Koss v. Slater* (1987), 116 Ill. 2d 389, 394, 397.) The statutory summary suspension of a driver's license, which a court may refuse to rescind at an implied-consent hearing, is an administrative function of the Secretary of State designed to protect persons who travel the highways; it is not punishment. *Koss,* 116 Ill. 2d at 395.

When issued a driver's license, the driver has consented to abide by the conditions imposed by the implied-consent statute and is presumed to have acknowledged that the continued use of the license to drive is dependent upon compliance with the conditions imposed by the law, one of which is not to drive under the influence of drugs or alcohol. The administrative statutory summary suspension of that privilege, based on probable cause that the driver was operating in an impaired condition, is triggered by the failure of the holder of the

privilege to comply with the agreed conditions. See *State v. Talavera* (Idaho November 3, 1995), No. 22033.

The implied-consent concept and the statutory summary suspension procedures were intended to protect the public, not to punish the licensee. (*People v. Esposito* (1988), 121 Ill. 2d 491, 501.) The legislature has declared that drivers impaired by alcohol or other drugs pose a threat to public safety and welfare, and the statutory summary suspension procedures reflect the public policy of this State to deter and remove these problem drivers from the highways. The overriding purpose of the statutory scheme is to make the highways safer, and the implied-consent statute is therefore *remedial* in nature. (See *People v. Wegielnik* (1992), 152 Ill. 2d 418, 425.) Even though the suspension of the privilege to drive under the implied-consent statute may have the incidental effect of deterring impaired drivers or may even seem to have " 'the sting of punishment' [citation]" from the defendant's point of view, this does not automatically mark the suspension as a form of punishment. (See *Kurth Ranch,* 511 U.S. at 777 n.14, 128 L. Ed. 2d at 777 n.14, 114 S. Ct. at 1945 n.14.) We hold that the summary suspension of a driver's license pursuant to the implied-consent statute is fairly characterized as a remedial civil sanction rather than as punishment for double jeopardy purposes.

The revocation or suspension of a licensee's privilege to engage in a licensed and regulated activity in this State, when the licensee has violated the standards of conduct and the conditions established by the law governing the licensed activity, has previously been held not to contravene the protection against double jeopardy even when the revocation followed a criminal conviction stemming from the licensee's regulated activity. See *Kaplan v. Department of Registration & Education* (1977), 46 Ill. App. 3d 968, 975 (license revocation proceeding following felony conviction did not amount to second criminal proceeding placing physician in double jeopardy).

Our holding finds substantial support in the nearly unanimous judicial decisions of other States which have concluded, in the wake of *Halper, Austin,* and *Kurth Ranch,* that the summary suspension or revocation of a driver's license immediately following an arrest for DUI under those States' respective implied-consent statutes does not constitute punishment for double jeopardy purposes and does not bar further prosecution for DUI. See, *e.g., State v. Zerkel* (Alaska App. 1995), 900 P.2d 744 (numerous cases cited therein); *Nolen v. State* (Ga. App. October 2, 1995), No. A95A1570; *State v. Higa* (1995), 79 Haw. 1, 897 P.2d 928; *State v. Talavera* (Idaho November 3, 1995), No. 22033; *State v. Zimmerman* (N.D. 1995), 539 N.W.2d 49 (numerous cases cited therein); *Tench v. Commonwealth* (1995), 21 Va. App.

200, 462 S.E.2d 922; *State v. McMaster* (Wis. Ct. App. November 8, 1995), No. 95—1159—CR; *cf. State v. Toriello* (1995), 71 Ohio Misc. 2d 81, 654 N.E.2d 1075 (automatic administrative suspension of defendant's driver's license after DUI arrest did not preclude further prosecution for DUI on double jeopardy grounds; criticized *Gustafson*). *Contra State v. Gustafson* (Ohio Ct. App. June 27, 1995), No. 94 C.A. 232 (unpublished), *appeal allowed* (1995), 73 Ohio St. 3d 1427, 652 N.E.2d 800.

We next consider whether the hearing to rescind the statutory summary suspension is a separate proceeding and whether a finding in favor of defendant is tantamount to an "acquittal" in a criminal proceeding so as to bar further prosecution for DUI on the basis of double jeopardy. We conclude that a rescission in favor of the defendant is not tantamount to an "acquittal" for double jeopardy purposes.

It is undisputed that summary suspension proceedings are civil in nature and are separate and apart from the criminal action for DUI. (*People v. Gerke* (1988), 123 Ill. 2d 85, 93.) The purpose of such a proceeding is not to convict the defendant of an offense, and since, as we have just explained, no "punishment" will be imposed—regardless of the outcome of the proceeding—the defendant has not been placed "at risk" for double jeopardy purposes.

The scope of the summary suspension hearing is limited to four central issues: (1) whether the person was placed under arrest; (2) whether the arresting officer had probable cause to believe that the person was driving while under the influence; (3) whether the person refused to take a chemical test; and (4) whether the person failed a test to which that person submitted. (*People v. Moore* (1990), 138 Ill. 2d 162, 167.) The driver bears the burden of proof at the rescission hearing. (*People v. Orth* (1988), 124 Ill. 2d 326, 337.) The rescission hearing is limited in scope and serves merely as an administrative device to remove impaired drivers from the road promptly; the nature and purpose of the hearing are different from a trial on the merits of the DUI charge. Such a hearing is thus not part of the criminal process and has no preclusive or collateral estoppel effect on the subsequent DUI trial. *Moore*, 138 Ill. 2d at 167-70.

Since the proceeding is not a means by which the State attempts to convict the defendant of a crime, the decision reached by the trial court in such a proceeding cannot be the functional equivalent of an "acquittal" for double jeopardy purposes; the defendant is simply not in danger of being found guilty of a crime. (See *People v. Deems* (1980), 81 Ill. 2d 384, 389-90.) Therefore, regardless of its outcome, a statutory summary suspension proceeding is not the equivalent of a crim-

inal prosecution for double jeopardy purposes which would bar further prosecution. Again, other jurisdictions which have recently considered this question have reached a similar result. See, *e.g.*, *Nolen v. State* (Ga. App. October 2, 1995), No. A95A1570 (following DUI arrest, suspension of driver's license at administrative implied-consent hearing is not punishment, nor is the hearing a prosecution for double jeopardy purposes); *Tench v. Commonwealth* (1995), 21 Va. App. 200, 462 S.E.2d 922 (automatic license suspension following DUI arrest did not impose "punishment" for double jeopardy purposes so that defendant was not twice placed in jeopardy when subsequently prosecuted for DUI).

For the foregoing reasons, the order of the circuit court denying the defendant's motion to dismiss the criminal prosecution against him for DUI is affirmed, and the cause is remanded for further proceedings.

Affirmed and remanded.

McLAREN, P.J., and INGLIS, J., concur.