THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CARL L. FASBINDER, Defendant-Appellant.

Fourth District    No. 4—95—0648

Argued February 14, 1996.—Opinion filed March 27, 1996.

GREEN, J., specially concurring.

Stephen R. Ryan (argued), of Ryan, Bennett & Radloff, of Mattoon, for appellant.

Millard Everhart, State's Attorney, of Toledo (Norbert J. Goetten, Robert J. Biderman (argued), and Elliott Turpin, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE COOK delivered the opinion of the court:

Defendant Carl L. Fasbinder was issued a ticket for driving under the influence of alcohol (DUI) in violation of section 11—501(a) of the Illinois Vehicle Code (Code) (625 ILCS 5/11—501(a) (West 1992)). Police asked defendant to submit to a breath test. Defendant consented, and the test showed his blood-alcohol concentration to be 0.18. Pursuant to sections 11—501.1 and 6—208.1(a)(4) of the Code (625 ILCS 5/11—501.1, 6—208.1(a)(4) (West 1992)), defendant's driver's license was summarily suspended for a period of one year. Defendant filed a petition to rescind his summary suspension, which was subsequently denied by the trial court. Defendant appealed. This court affirmed the denial to rescind summary suspension. *People v. Fasbinder*, No. 4—95—0418 (February 9, 1996) (unpublished order under Supreme Court Rule 23).

Defendant in the present case moved to dismiss the DUI charge on the grounds that the summary suspension of his driver's license was penal in nature and, therefore, his subsequent prosecution for DUI was barred by the double jeopardy clauses of the United States Constitution and the Illinois Constitution. U.S. Const., amend. V; Ill. Const. 1970, art. I, § 10. Defendant now appeals the trial court's denial of his motion to dismiss. 145 Ill. 2d R. 604(f) (providing for the appeal of a denial of a motion to dismiss on double jeopardy grounds).

The Second District Appellate Court recently considered this question in a case where the summary suspension was rescinded in an agreed order and the defendant then moved to dismiss the DUI charges. *People v. Dvorak*, 276 Ill. App. 3d 544, 658 N.E.2d 869 (1995). In *Dvorak*, the court considered the Supreme Court's decisions in *United States v. Halper*, 490 U.S. 435, 104 L. Ed. 2d 487, 109 S. Ct. 1892 (1989) (statutory penalty of $130,000 for Medicare overcharges of $585), *Austin v. United States*, 509 U.S. 602, 125 L. Ed. 2d 488, 113 S. Ct. 2801 (1993) (forfeiture of property used to facilitate drug-related crimes), and *Department of Revenue v. Kurth Ranch*, 511 U.S. 767,

128 L. Ed. 2d 767, 114 S. Ct. 1937 (1994) (tax imposed on illegal drugs following criminal penalty for same conduct). The second district rejected the argument that the test to be used, in determining whether summary suspension of driving privileges constitutes punishment, is whether such suspension " 'cannot fairly be said solely to serve a remedial purpose.' " *Dvorak*, 276 Ill. App. 3d at 549, 658 N.E.2d at 874, quoting *Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902. The second district found the following language more instructive: " 'the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve.' " *Dvorak*, 276 Ill. App. 3d at 547, 658 N.E.2d at 873, quoting *Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 501, 109 S. Ct. at 1901.

According to the second district, the administrative statutory summary suspension of one's privilege to drive is clearly remedial in nature, designed to protect persons who travel the highways, and not punishment for double jeopardy purposes. *Dvorak*, 276 Ill. App. 3d at 551, 658 N.E.2d at 875, citing *People v. Esposito*, 121 Ill. 2d 491, 501, 521 N.E.2d 873, 877 (1988), and *People v. Wegielnik*, 152 Ill. 2d 418, 425, 605 N.E.2d 487, 490 (1992). Even though the suspension of the privilege to drive may have the incidental effect of deterring impaired drivers, that does not automatically mark the suspension as a form of punishment. *Dvorak*, 276 Ill. App. 3d at 551, 658 N.E.2d at 875-76. The second district noted that its holding was similar to that in other license suspension cases, such as those involving a physician's license, and was supported by the nearly unanimous decisions of other states holding that summary suspension of a driver's license did not bar further prosecution for DUI. *Dvorak*, 276 Ill. App. 3d at 551-52, 658 N.E.2d at 876.

*Dvorak* was decided prior to the supreme court's decision in *In re P.S.*, 169 Ill. 2d 260 (1996). In *P.S.* the supreme court held that the forfeiture of a defendant's car under the Drug Asset Forfeiture Procedure Act (725 ILCS 150/1 *et seq.* (West 1992) (formerly Ill. Rev. Stat. 1991, ch. 56$^{1}$/2, par. 1671 *et seq.*)) prevented defendant's further prosecution on the charge of unlawful possession of a controlled substance, cocaine. Ill. Rev. Stat. 1991, ch. 56$^{1}$/2, par. 1402(c). The supreme court upheld forfeitures, however, in cases where the forfeitures and criminal charges each required proof of an element which the other did not.

The question in *P.S.* was "whether the forfeiture of Kimery's automobile served, in part, to punish him. If so, the forfeiture will be considered punishment for purposes of the double jeopardy clause."

*P.S.*, 169 Ill. 2d at 282. In response to the State's argument that the proportionality test of *Halper* should be applied to determine the fairness of the forfeiture, the supreme court said "*Austin* appears to have specifically rejected a case-by-case approach, opting for a more categorical approach to forfeitures of conveyances used to facilitate the transportation, etc., of contraband." *P.S.*, 169 Ill. 2d at 285-86. There is no reason to believe, however, that the categorical approach which *Austin* and *P.S.* applied to forfeiture statutes would be applied to license suspensions and revocations. Forfeiture statutes have historically been understood as punishment (*P.S.*, 169 Ill. 2d at 281), while the summary suspension of drivers' licenses has been viewed as having a purpose of making the highways safer (*Esposito*, 121 Ill. 2d at 501, 521 N.E.2d at 877; *Wegielnik*, 152 Ill. 2d at 425, 605 N.E.2d at 490).

The argument that summary suspension is punitive relies on statutory public policy language that summary suspension is appropriate "to provide a *deterrent* to such practice and to remove problem drivers from the highway." (Emphasis added.) 625 ILCS 5/6—206.1 (West 1994). Retribution and deterrence are said to be the traditional aims of punishment. " '[R]etribution and deterrence are not legitimate nonpunitive governmental objectives.' " *Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902, quoting *Bell v. Wolfish*, 441 U.S. 520, 539 n.20, 60 L. Ed. 2d 447, 468 n.20, 99 S. Ct. 1861, 1874 n.20 (1979). *Halper* involved a civil penalty which would deter crime in the same manner as would a fine. The summary suspension statute, however, does not attempt to deter conduct in the way that a fine or prison sentence deters individuals from committing crime. The summary suspension statute attempts to deter conduct like any other licensing statute does—by keeping unqualified individuals from situations where they have a special potential to harm members of the public. The summary suspension statute does not produce any financial gain for government, either in the form of a fine or reimbursement of expenses.

We conclude that *Dvorak* remains good law following the supreme court's decision in *P.S.* The summary suspension of a driver's license is fairly characterized as a remedial civil sanction rather than as punishment for double jeopardy purposes. *Dvorak*, 276 Ill. App. 3d at 551, 658 N.E.2d at 876.

Our view that a less rigorous test than that set out in *P.S.* could be applied in cases other than forfeiture cases is supported by a case subsequent to *P.S.* In that case, the supreme court refused to allow the imposition of a $54,385 tax plus penalties and interest under the Cannabis and Controlled Substances Tax Act (Ill. Rev. Stat. 1989, ch.

120, par. 2151 *et seq.*), where the party from whom the tax was sought had already been convicted and sentenced on criminal charges involving the same contraband. *Wilson v. Department of Revenue*, 169 Ill. 2d 306 (1996). The court noted that tax statutes serve a purpose quite different from civil penalties, and that employing the method used in *Halper* would not work in determining whether a tax statute should be characterized as punishment for double jeopardy purposes. *Wilson*, 169 Ill. 2d at 313. The court did, however, differentiate a drug tax from standard tax assessments, concluding a drug tax is a form of punishment, designed not for revenue but to quash the drug trade. *Wilson*, 169 Ill. 2d at 317.

Accordingly, the decision of the trial court denying defendant's motion to dismiss on double jeopardy grounds is affirmed.

Affirmed.

KNECHT, J., concurs.

JUSTICE GREEN, specially concurring:

I concur in the decision to affirm the denial of the motion to dismiss on double jeopardy grounds. I agree that where, as here, a suspension or revocation of a license arising from conduct that is also criminal is alleged or involved, a different approach to double jeopardy problems is appropriate than is the case where the criminal conduct gives rise to (1) a forfeiture of property (*Austin*, *P.S.*); or (2) a civil monetary penalty (*Halper*). I deem that the question involved is closer than does the majority. I analyze it somewhat differently. However, I end up agreeing that language in *Kurth Ranch*, cited in *Wilson*, permits us to conclude that the fact that the summary suspension procedure has some penal aspects to it does not prevent subsequent criminal prosecution for DUI.

I agree with the majority that the summary suspension procedure of sections 11—501.1 and 6—208.1(a)(4) of the Code is predominantly remedial and for the purpose of getting drivers who are likely to commit DUI off the road. However, to the extent that the majority determines that the procedure does not also have a punitive purpose, I am in disagreement. That is why I am concerned with the statement that "a civil sanction that cannot fairly be said *solely* to serve a *remedial* purpose, but rather can *only* be explained as *also* serving *either* retributive or *deterrent* purposes, is *punishment*, as we have come to understand the term." (Emphasis added.) *Halper*, 490 U.S. at 448, 104 L. Ed. 2d at 502, 109 S. Ct. at 1902. If that statement is applicable here, I could not vote to affirm.

My conclusion that summary suspension has some deterrent effect, and thus a punitive effect, is based upon the portion of section 6—206.1 of the Code which states:

> "It is hereby declared a policy of the State of Illinois that the driver who is impaired by alcohol or other drugs is a threat to the public safety and welfare. Therefore, to provide a *deterrent* to such practice *and* to remove problem drivers from the highway, a statutory summary driver's license suspension is appropriate." (Emphasis added.) 625 ILCS 5/6—206.1 (West 1992).

The foregoing language clearly states that the summary suspension procedure has two purposes. One is to deter people from driving while intoxicated and the other is to remove "problem drivers from the highway." Any other interpretation ignores the use of the word "and." The majority opinion is not clear as to the meaning it gives to that language. To the extent it interprets the wording to mean "to provide a deterrent to such practice by removing problem drivers from the highway," I am in disagreement.

In *Esposito*, although the opinion described a summary suspension procedure as "remedial in nature," that opinion also stated that the procedure "not only removes a particularly dangerous class of drivers from the roadways as promptly as possible, *it also deters others from driving while* under the influence." (Emphasis added.) *Esposito*, 121 Ill. 2d at 510, 521 N.E.2d at 881. Similarly, in *Wegielnik* (152 Ill. 2d at 425, 605 N.E.2d at 490), the supreme court described the procedure as being "remedial in nature," but also described the purpose as "to deter and remove problem drivers from the highway." Thus, I can only conclude that the summary procedure has some significant deterrent purpose to it and, if the *Halper* language has application, deterrence is punishment.

In *P.S.*, the court centered its discussion of the question of punishment upon *Halper*, *Austin*, and *Kurth Ranch*. *Halper* was discussed first. The opinion noted *Halper* had explained that the issue to be evaluated was the purpose of the sanction rather than the underlying nature of the proceeding resulting in the sanction. The *P.S.* court then explained that based on the foregoing and other principles, the *Halper* Court made its determination that a civil sanction was remedial only if it had no deterrent or retributive purposes.

The *P.S.* opinion then explained a rule announced in *Halper*. That rule concerns the situation when a monetary civil sanction is grossly in excess of any cost to the government arising from the conduct giving rise to the sanction. Under those circumstances, the civil sanction becomes a second punishment when that defendant has also been convicted of a crime resulting from that conduct. The rule

described is the proportionality rule discussed by the majority. The *P.S.* court adopted *Halper*'s explanation that a defendant in that situation would be entitled to an accounting to determine the proportionality between the sanction and the expense. *P.S.*, 169 Ill. 2d at 280.

The *P.S.* opinion then described how *Austin* had rejected any proportionality test as to forfeitures, concluding that historically they had at least some punitive aspect. *Kurth Ranch* was mentioned and explained to hold that a tax on the possession of illegal drugs constituted double jeopardy when the party on whom the tax was assessed had been convicted of that possession. After the foregoing discussion of *Halper, Austin,* and *Kurth Ranch,* the *P.S.* court stated that "[b]ased on" the foregoing authority, the court needed "to determine whether the forfeiture of Kimery's automobile served, *in part,* to punish him" (emphasis added) and also said "[i]f so, the forfeiture will be considered punishment for purposes of the double jeopardy clause." *P.S.*, 169 Ill. 2d at 282.

The statement in *P.S.* that the court had considered the *Halper* statement in making the determination as to how it should proceed is a clear indication that in forfeiture cases, if any punishment occurs, the forfeiture is punitive in nature. The *P.S.* court gave no indication that deterrence is not punishment, and the content of the discussion going from the *Halper* statement in question to the conclusion that any punitive aspect of the forfeiture made it punishment would seem to indicate an agreement that a deterrent aspect of a sanction made it punitive.

Later in the *P.S.* opinion, the court said that the State contended that a test should have been made to determine under the proportionality test of *Halper* whether the value of the property seized was out of proportion to the State's expenses in prosecuting the matter. The *P.S.* court responded that the *Austin* court had taken a categorical approach based upon a theory that the expenses incurred by the government were very unlikely to correspond to the value of the forfeited items in a meaningful way so that forfeiture would be deemed punitive as had been the historical assumption. *P.S.*, 169 Ill. 2d at 285. I agree that no proportionality test was appropriate here and no categorical approach deeming all summary suspensions of licenses punitive is appropriate.

I share the concern at least implied by the majority here and in *Dvorak* and the majority of post-*Halper* decisions in other jurisdictions, that giving double jeopardy protection under circumstances such as those here does not make sense. Any impairment of a license has some inherent deterrent involved in that it does discourage the conduct giving rise to the impairment. I agree that the situation is

different than the imposition of a civil monetary penalty or a forfeiture.

As indicated by the majority, a reference in *Wilson* (which cites language in *Kurth Ranch*) gives the best explanation why we can avoid application of the *Halper* language which gives me concern. 278 Ill. App. 3d 859. In *Kurth Ranch*, the United States Supreme Court held that a double jeopardy protection prevented a State from collecting a tax it had imposed on those possessing certain controlled substances when the taxpayer had been convicted of the criminal offense of that possession. That opinion stated "[w]e begin by noting that neither a high rate of taxation nor *an obvious deterrent purpose automatically* marks this tax a form of punishment." (Emphasis added.) *Kurth Ranch*, 511 U.S. at 780, 128 L. Ed. 2d at 779, 114 S. Ct. at 1946.

The *Kurth Ranch* opinion went on to explain that the fact the tax was for conduct which was criminal did tend to indicate that the tax was punitive but also applied further factors to reach that conclusion. The significance of the quoted language is that the United States Supreme Court has held that not all civil sanctions which have significant deterrent qualities prevent criminal prosecutions for the same conduct.

As I have indicated, I think the question of whether a summary suspension of the type here prevents subsequent criminal prosecution because of double jeopardy is close. Nevertheless, because the summary suspension procedure is predominately a remedial one to get those drivers likely to be dangerous temporarily off the road, I agree we can make a commonsense determination that no double jeopardy bar can be imposed here.