No. 3--96--0059

_________________________________________________________________

                                IN THE

            APPELLATE COURT OF ILLINOIS

                         THIRD DISTRICT

                               A.D. 1996

_________________________________________________________________

THE PEOPLE OF THE STATE OF      )   Appeal from the Circuit Court

ILLINOIS, ex rel. DAVID W.      )   of the 13th Judicial Circuit,

NEAL, State's Attorney of       )   Grundy County, Illinois

Grundy County,                  )

                                )

     Plaintiff-Appellant/       )   

     Cross-Appellee,            )

                                )

        v.                      )   No. 95--MR--32 

                                )

EDMUND W. RYAN (One 1988 GMC    )

G-250 Sierra Truck Vehicle      )

Identification Number           )

1GDJV34J7JJ501839),             )

                                )   Honorable

     Defendant-Appellee/        )   Paul E. Root,

     Cross-Appellant.           )   Judge Presiding

_________________________________________________________________

JUSTICE McCUSKEY delivered the opinion of the court:

_________________________________________________________________

     On October 30, 1995, the State filed a complaint for

forfeiture against a 1989 White Dodge GMC Sierra Truck, vehicle

identification number 1GDJV34J7JJ501839 (truck), owned by the

claimant, Edmund W. Ryan.  The complaint was based on section

12(a)(3) of the Cannabis Control Act (720 ILCS 550/12(a)(3) (West

1994)) and the Drug Asset Forfeiture Procedure Act (the Forfeiture

Act) (725 ILCS 150 et seq. (West 1994)).  Following a hearing, the

trial court found the truck was not used to facilitate the

transportation, sale, receipt, possession or concealment of

cannabis.  Therefore, the trial court denied the State's complaint

for forfeiture.  The State appeals, and for reasons which follow,

we affirm.  

                                BACKGROUND

     On August 11, 1995, Ryan was driving his truck from Aurora to

Morris to deliver garbage to the landfill in Morris.  The garbage

was from Ryan's work as a construction site clean-up person.  After

dropping off the load, Ryan was stopped on Illinois Route 47 by

Morris police officer Brent Dite.  The officer stopped Ryan's

vehicle because it was missing a rear license plate.  

     Officer Dite conducted a check of Ryan's license, registration

and proof of insurance documents.  No problems were found, and the

officer returned the documents to Ryan.  What happened at this

point is disputed by the parties.

                         OFFICER DITE'S TESTIMONY

     According to Officer Dite, he returned the documents and

advised Ryan that he was going to give Ryan a verbal warning

concerning the missing license plate.  Ryan then asked the officer

if he would like to see the missing license plate.  Officer Dite

informed Ryan that he did not have to produce the license plate,

but he may if he wished.  Ryan reached behind the seat and

retrieved the license plate.  Officer Dite then asked Ryan if he

had anything illegal in the truck.  Ryan said no and told the

officer that he could check if he so desired.  

     Following the discussion about the license plate, Officer Dite

asked Ryan to exit the truck and stand by the curb.  By this time,

another officer was on the scene, and he stood by Ryan on the curb. 

Officer Dite noticed a duffel bag sitting on the seat of the truck. 

He unzipped the bag, and saw another bag inside which appeared to

contain cannabis.  Officer Dite then told the second officer to

place Ryan under arrest.

                         CLAIMANT RYAN'S TESTIMONY

     According to Ryan, Officer Dite returned the documents and

told Ryan that everything was "clean."  After turning around and

taking a step towards his squad car, Dite quickly turned back

around and asked Ryan if he had any illegal knives or guns in the

truck.  When Ryan said no, Officer Dite asked for permission to

search the truck.  

     Ryan asked, "can I stop you?"  The officer did not reply. 

Ryan then asked the officer if he thought the truck was stolen. 

Again, Officer Dite did not reply.  Ryan said he volunteered to

retrieve the license plate from behind the seat.  Because the seat

was a bench-style seat, Ryan exited the vehicle on the driver's

side and walked to the passenger side to raise the seat and

retrieve the license plate.  Officer Dite then said he was going to

search the truck, and Ryan did not respond.  After this exchange,

Ryan picked the duffel bag off the seat and held it under his arm

as he stood by the curb.  The officer demanded to see the duffel

bag, so Ryan handed it to him.  Dite opened the bag and discovered

the cannabis.  At this point, Ryan was placed under arrest.  Ryan

testified that he did not feel he was free to leave at any time

during his encounter with Officer Dite.  

                            PROCEDURAL HISTORY

     Ryan was charged in a companion felony case.  The State

proceeded with the forfeiture, and Ryan asserted his fifth

amendment constitutional right not to testify at the hearing.  In

response to Ryan's constitutional assertion, the State gave Ryan

transactional immunity to compel his testimony at the forfeiture

hearing.  Following Ryan's agreement to testify, the State 

dismissed the felony charge.

     In a January 8, 1996, order, the trial court made the

following findings: (1) the duffel bag containing the cannabis was

seized from Ryan's person; (2) the cannabis was for the personal

use of either Ryan or his wife; (3) it was unnecessary for the

court to determine the propriety of the search; and (4) based upon

People v. One 1986 White Mazda Pickup Truck, 162 Ill. 2d 67, 642

N.E.2d 455 (1994), the forfeiture must fail because the truck was

not used to facilitate the transportation, sale, receipt,

possession or concealment of the cannabis.  Following our careful

review of the record, we agree with the trial court's findings.  

                                 ANALYSIS 

                             I. Jurisdiction 

     Initially, Ryan claims the double jeopardy clauses of the

United States and Illinois constitutions (U.S. Const., amend. V;

Ill. Const. 1970, art. I, §10) prohibit this court from reviewing

the State's appeal.  Essentially, Ryan contends that the forfeiture

hearing below was like a criminal trial where he was "acquitted." 

As a consequence, Ryan argues that this court is without

jurisdiction to hear the State's appeal because it may result in a

second "prosecution" of Ryan.  We do not agree with Ryan's double

jeopardy argument.  

     Our supreme court has determined that a double jeopardy claim

under the Illinois constitution is no different from a double

jeopardy claim under the federal constitution.  In re P.S., 169

Ill. 2d 260, 271, 661 N.E.2d 329, 335 (1996).  Therefore, we will

focus our analysis on cases interpreting the double jeopardy clause

of the fifth amendment to the United States constitution.  

     The double jeopardy clause safeguards against three types of

governmental abuses: (1) a second criminal prosecution after

acquittal; (2) a second prosecution after conviction; and (3)

multiple punishments for the same offense.  In re P.S., 169 Ill. 2d

at 272, 661 N.E.2d at 335.  Because the felony charge against Ryan

was dismissed by the State, the multiple punishments argument is

not before us.  

     The Supreme Court of the United States recently determined

that the federal in rem civil forfeiture statute (21 U.S.C.

§881(a)(7)) results in a remedial, civil sanction which is distinct

from potentially punitive in personam civil penalties, such as

fines, and does not constitute punishment under the double jeopardy

clause.  United States v. Ursery, 518 U.S. ___, 135 L. Ed. 2d 549,

116 S. Ct. ___ (1996). 

     A two-prong analysis is set forth in Ursery to determine if a

forfeiture constitutes "punishment" for double jeopardy purposes. 

The first prong of the analysis requires this court to decide

whether the legislature intended the forfeiture proceedings to be

criminal or civil in nature.  If we determine that the legislature

intended for the proceedings to be civil in nature, then the second

prong of the analysis requires us to consider whether the

proceedings are so punitive that they cannot be viewed as civil in

nature, despite the legislature's intent.  Ursery, 518 U.S. at ___,

135 L. Ed. 2d at 568, 116 S. Ct. at ___. 

     Turning to the instant case, it is clear that the Illinois

General Assembly intended the proceedings under the Forfeiture Act

to be deemed civil in nature.  725 ILCS 150/2 (West 1994); see also

725 ILCS 150/9(B) (West 1994); 725 ILCS 150/9(G) (West 1994).  In

addition, the Illinois appellate court has consistently treated

proceedings pursuant to the Forfeiture Act as civil in nature.  See

People v. Towns, 269 Ill. App. 3d 907, 646 N.E.2d 1366 (1995);

People v. $52,204 United States Currency, 252 Ill. App. 3d 778, 623

N.E.2d 959 (1993); People ex rel. Spencer v. One 1978 Pontiac, 242

Ill. App. 3d 411, 610 N.E.2d 311 (1993); People ex rel. Burmila v.

One 1983 Oldsmobile, 239 Ill. App. 3d 1011, 607 N.E.2d 311 (1993). 

     Next, we do not find the Forfeiture Act in question to be so

punitive as to render it criminal in nature.  The Supreme Court has

noted that when a forfeiture statute has certain punitive aspects,

it may not be deemed criminal in nature if it also serves important

nonpunitive goals.  Ursery, 518 U.S. at ___, 135 L. Ed. 2d at 569,

116 S. Ct. at ___.  

     In this case, just as with the federal forfeiture statute

under consideration in Ursery, our State's Forfeiture Act has many

nonpunitive goals.  We find that the Forfeiture Act before us will

encourage property owners to take care in managing their property

and insure that it is not used for illegal purposes.  See Ursery,

518 U.S. at ___, 135 L. Ed. 2d at 569, 116 S. Ct. at ___.   Also,

we note that the proceeds from forfeited property in Illinois are

distributed among various agencies in order to assist in the

enforcement of the laws dealing with controlled substances.  720

ILCS 550/12(g) (West 1994).  Moreover, the Supreme Court in Ursery

has held that: (1) in rem civil forfeitures have historically not

been viewed as punishment; (2) forfeiture may serve a deterrent

purpose distinct from any punitive purpose; and (3) the fact that

a forfeiture statute is tied to criminal activity is insufficient

to render the statute punitive.  Ursery, 518 U.S. at ___, 135 L.

Ed. 2d at 570, 116 S. Ct. at ___. 

     In sum, we conclude that the double jeopardy clause of the

United States Constitution is not implicated by the procedures of

the Illinois Forfeiture Act.  The statute in question involves in

rem proceedings which the General Assembly clearly intended to be

civil in nature.  In addition, we find no clear evidence to support

a finding that the form and effect of the Forfeiture Act is so

punitive as to be criminal in nature.  Finally, we conclude that

Ryan's double jeopardy rights are not implicated by this appeal. 

As a result, we have jurisdiction to hear the State's appeal.  

                     II. Applicability of the statute

     The Cannabis Control Act provides that:

          "the following are subject to forfeiture: ***

          all conveyances, including aircraft, vehicles

          or vessels, which are used, or intended for

          use, to transport, or in any manner to

          facilitate the transportation, sale, receipt,

          possession, or concealment of property

          described in paragraph (1) or (2) that

          constitutes a felony violation of the Act." 

          720 ILCS 550/12 (West 1994).

                               Initially, in our review, we note that the forfeiture

provisions of the Illinois Controlled Substances Act (see 720 ILCS

570/505 (West 1994)) are identical to those in the Cannabis Control

Act.  The supreme court has pointed out that the key word in these

statutes is "facilitate," which means "to make easier or less

difficult."  1986 White Mazda, 162 Ill. 2d at 69, 642 N.E.2d at

456.  In 1986 White Mazda, the claimant was stopped in his vehicle

pursuant to a warrant which had issued because he failed to appear

on a traffic violation.  The claimant was seized, and cocaine was

found on a plastic straw in his interior coat pocket and a packet

of cocaine was found in his underwear.  

     The Illinois supreme court concluded that the mere presence of

cocaine on the driver's person was not sufficient to support a

finding that the truck was used to facilitate the possession of the

cocaine.  The court also concluded that the "use of the vehicle was

completely incidental to the possession of the [cocaine]."  1986

White Mazda, 162 Ill. 2d at 70, 642 N.E.2d at 456.  The 1986 White

Mazda case focused only on the possession portion of the forfeiture

statute because the court said that the complaint for forfeiture

alleged the vehicle "was used to facilitate the possession of

cocaine."  1986 White Mazda, 162 Ill. 2d at 68, 642 N.E.2d at 455. 

     Based upon 1986 White Mazda, we hold that the trial court in

the instant case was correct in denying the complaint for

forfeiture based on its conclusion that Ryan's truck was not used

to facilitate the possession of cannabis.  The contraband in

question was secreted in a duffel bag which the trial court found

was seized from Ryan's person.  The fact Ryan was in the truck some

time prior to the seizure does not give rise to a conclusion that

the truck made it easier for Ryan to possess the cannabis.  We find

that the use of the vehicle was completely incidental to the

possession of the cannabis.  See 1986 White Mazda, 162 Ill. 2d at

70, 642 N.E.2d at 456.  Ryan's possession of the cannabis would

have been no more difficult had he "been walking, taking a bus, or

riding a motorcycle."  1986 White Mazda, 162 Ill. 2d at 70, 642

N.E.2d at 456.  

     In a decision filed the same day, the Illinois supreme court

upheld a forfeiture under slightly different circumstances.  The

case of People ex rel. Waller v. 1989 Ford F-350 Truck, 162 Ill. 2d

78, 642 N.E.2d 460 (1994) involved a claimant arrested for driving

under the influence of alcohol.  The defendant was taken to the

police station, and cocaine was found in his pants pockets during

the booking process.  1989 Ford F-350 Truck, 162 Ill. 2d at 81, 642

N.E.2d at 462.  Citing 1986 White Mazda, the supreme court noted

that the forfeiture could not be upheld on the basis that the truck

facilitated the possession of the cocaine.  1989 Ford F-350 Truck,

162 Ill. 2d at 83, 642 N.E.2d at 463.

     However, our supreme court upheld the forfeiture based on the

use of the truck to facilitate the transportation of the cocaine. 

At the forfeiture hearing in 1989 Ford F-350 Truck, a police

officer testified that, at the time of the arrest, the claimant

told the officer he bought the cocaine in a bar and was carrying it

to his employee.  At trial, the claimant said the cocaine was only

for his personal use and denied making the statement to the

officer.  After reviewing the conflicting testimony, the trial

court found the truck was used to facilitate the transportation of

the cocaine from the bar so that it could be delivered to the

claimant's employee.  The supreme court agreed with the trial

court's conclusion.   

     Addressing only the transportation portion of the forfeiture

complaint, the supreme court stated:

          "the trial court could have properly believed

          [the police officer's] testimony that

          defendant told him of his intent to deliver

          the cocaine to an employee.  Thus, the trial

          court could have properly concluded that the

          preponderance of the evidence demonstrated

          that defendant's truck was used in

          facilitating the transportation of cocaine." 

          1989 Ford F-350 Truck, 162 Ill. 2d at 86, 642

          N.E.2d at 464.

                               In determining what "transportation" means under the

forfeiture provisions of the Cannabis Control Act, the State urges

us to look only to federal case law for guidance in reaching our

decision.  We decline to do so.  We are aware that the Forfeiture

Act does contain a legislative declaration lauding the success of

the federal narcotics civil forfeiture statute and directing the

courts of this State to construe the Forfeiture Act "in light of"

the federal statute.  See 725 ILCS 150/2 (West 1994).  However, in

the instant case, the forfeiture language we are required to

construe is contained in the Cannabis Control Act.  See 720 ILCS

550 et seq. (West 1994).  We note that this act contains no

legislative declaration by the General Assembly that federal law

should control our interpretation of the Act.  See People v. One

1986 White Mazda Pickup Truck, 251 Ill. App. 3d 79, 81, 621 N.E.2d

250, 252 (1993), aff'd, 162 Ill. 2d 67, 642 N.E.2d 455 (1994).  

     We are mindful of the general rule of law that forfeitures are

not favored and that forfeiture statutes must be strictly construed

in favor of the property owner.  1986 White Mazda, 251 Ill. App. 3d

at 83, 621 N.E.2d at 254.  As a consequence, we are reluctant to

expand the application of the Forfeiture Act into areas which have

not been previously approved by our supreme court.  

     In 1989 Ford F-350, our supreme court highlighted the trial

court's conclusion that the claimant was transporting the drugs to

deliver them to his employee.  Here, in the case at hand, we find

the facts clearly distinguishable.  The trial court determined that

Ryan took the drugs from his residence and was returning home with

the drugs at the conclusion of his work day.  The trial court also

determined that the cannabis was possessed solely for the personal

use of either Ryan or his wife.  The record is undisputed that Ryan

was not possessing the cannabis for sale or delivery to another

person.

     Based upon our review of applicable Illinois law, we conclude

that the General Assembly did not intend for the transportation

language of the Cannabis Control Act to be interpreted so as to

forfeit motor vehicles in those cases where: (1) the trial court

has found that the claimant merely possessed a small amount of

cannabis which was solely for personal use and not intended to be

sold or delivered to another person; and (2) where the use of the

vehicle was completely incidental to the possession of the

controlled substance.  

                                CONCLUSION

     In sum, we find the trial court's determination was not

against the manifest weight of the evidence.  Moreover, we agree

with the trial court's conclusion that Ryan's truck was not used to

facilitate the transportation, sale, receipt, possession or

concealment of cannabis.

     Accordingly, we affirm the judgment of the circuit court of

Grundy County.

     Affirmed. 

     HOLDRIDGE, P.J., and LYTTON, J., concur.